[830 NYS2d 84]

In the Matter of GWENERVA D. CHERRY, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 13, 2007

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.

No appearance for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Gwenerva D. Cherry was admitted to the practice of law in the State of New York by the First Judicial Department on March 25, 1991. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee seeks an order pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) immediately suspending respondent from the practice of law based upon her failure to cooperate with the Committee's investigation of several disciplinary complaints against her, and upon uncontested evidence of respondent's professional misconduct that is an immediate threat to the public interest.

Four of the seven disciplinary complaints filed against respondent involve unconsummated real estate sales in which respondent represented the seller, Rapsil Construction Corp. (Rapsil). In November 2005, Rapsil filed for bankruptcy. Subsequently, the filing was converted to a chapter 7 proceeding and a trustee was appointed. At that time, there were six prospective purchasers of Rapsil's properties, four of whom filed complaints with the Committee. The trustee did not permit these sales to proceed, asked respondent for an accounting and to remit to him all of the purchasers' downpayment deposits, totaling $507,600. Respondent gave the trustee a check in that amount from the firm's IOLA account, which was returned for insufficient funds.

The trustee then moved in Bankruptcy Court for an order directing respondent to turn over all records and funds being held in relation to Rapsil based upon his concern "that the contract vendee deposits have been stolen." He also noted that respondent's firm appeared to have simultaneously contracted to sell one of Rapsil's properties to two separate purchasers and accepted contract deposits from each. The Bankruptcy Court granted the motion by order dated March 17, 2006 and directed respondent's firm to comply within 10 days. To date, respondent has not complied with that order.

A separate complaint was filed by respondent's law partner, Carlyet Marshburn, alleging respondent misappropriated escrow funds and had abandoned legal matters of the firm. Mr. Marshburn has cooperated fully with the Committee with respect to

these incidents. Significantly, Marshburn demonstrated that respondent fulfilled the day to day bookkeeping for the firm and kept the firm's IOLA records in her office. Respondent removed those records, and, after initially stating that the discrepancies in the IOLA account were bank errors, admitted to Marshburn that she had misappropriated the funds and was attempting to replace them.

A sua sponte investigation was commenced by the Committee based upon a letter dated April 21, 2006 from the Lawyers' Fund for Client Protection which stated two of the firms IOLA check were dishonored. One was the check issued to the trustee in bankruptcy in the amount of $507,600, as well as another check in the amount of $760.22. This letter was forwarded by the Committee to respondent's law firm. Respondent answered the letter, stating falsely that Marshburn had the records, that she was obtaining copies from the bank, and would forward them to the Committee. No IOLA records have been submitted to the Committee by respondent. As noted, Marshburn demonstrated to the Committee that respondent, not he, had control of the IOLA records.

Because of respondent's lack of cooperation, the Committee was forced to obtain a subpoena from us for the IOLA records. We also issued a subpoena for the Committee to take her deposition. Although three separate depositions were scheduled between July and September 2006, respondent failed to appear at any. She did contact the committee after her failure to appear at the first deposition, claiming she had suffered a stroke and was medically unable to appear at the July deposition. However, the medical records obtained by the Committee did not bear out respondent's claim of inability to appear for the July deposition. Respondent has offered no reason for her failure to contact the Committee or appear at the two subsequently scheduled depositions.

The Committee retained an investigative accountant who created a spreadsheet from the IOLA records subpoenaed from the bank. Respondent was served with this spreadsheet and asked to identify client matters and transactions. She has not responded to this request.

An audit of respondent's IOLA records clearly demonstrate that the balance in the account was far below the amount respondent was obligated to maintain intact on behalf of the individuals who made contract deposits for the Rapsil properties. Moreover, respondent continued to invade the escrow funds

until, as of March 31, 2006, the last day of the audit period, there was a negative balance in the IOLA account. The records demonstrate, inter alia, that respondent issued more than $31,000 in checks in matters unrelated to Rapsil after her $507,600 check to the trustee had been dishonored. There were also unexplained disbursements in excess of $385,000 from the IOLA account to the firms operating account. Thus, even though respondent was aware of the deficit in the account, she continue to diminish client funds. These records show that respondent converted and/or misappropriated the escrow funds belonging to the purchasers under the Rapsil contracts by making disbursements in unrelated matters without authorization to do so.

Moreover, respondent's attempts at restitution, using personal funds in some cases, demonstrates that she converted and/or misappropriated escrow funds. We note that while the Committee was attempting to secure respondent's cooperation with respect to the Rapsil matters, two additional complaints were received. One involved a situation where respondent contacted a client named Samantha Fong and asked her to invest in a real estate company operated by respondent. Ms. Fong signed an agreement and wired $40,000 to respondent. When respondent failed to respond to her inquiries regarding the investment, Ms. Fong went to respondent's office and found it closed. She further discovered that all respondent's bank accounts were closed. Respondent never submitted an answer to this complaint.

The second additional complaint was from Cheryl Roberts-Burt, who had retained respondent for $10,000 to handle a commercial litigation matter. When Ms. Roberts-Burt's inquiries as to the status of the matter went unanswered, she went to respondent's office and found it closed. Again, respondent has not submitted an answer to this complaint.

The Committee seeks respondent's immediate suspension based upon her failure to cooperate, and uncontested evidence of serious professional misconduct that threatens the public interest (22 NYCRR 603.4 [e] [1] [i], [iii]). Respondent's failure to answer three of the seven complaints, her failure to appear for several scheduled depositions or produce financial information and records pursuant to our subpoena demonstrates her failure to cooperate with the Committee. The uncontested evidence established that she converted and/or misappropriated client funds without permission or authority in violation of Code of Professional Responsibility DR 1-102 (a) (4) and DR 9-102 (a) (22 NYCRR 1200.3, 1200.46). We agree with the Com-

mittee that the pattern of her actions negates any semblance of mistake or negligence on her part. Moreover, respondent violated DR 1-102 (a) (4), (5) and (7) by lying to the Committee when she stated in those answers that she did file that she had returned most of the downpayments to the prospective purchasers. Additionally, respondent disregarded an order the United States Bankruptcy Court to remit the escrow funds related to Rapsil and account for those funds. Finally, respondent participated in a fraud by the simultaneous sale of the same property to two potential buyers. Respondent has not submitted opposition papers to the Committee's motion for immediate suspension.

The Committee has presented uncontested evidence that respondent has committed serious professional misconduct that immediately threatens the public interest warranting her interim suspension (*Matter of Kohn*, 18 AD3d 96 [2005]). Additionally, respondent has failed to fully cooperate with the Committee's investigation into seven disciplinary complaints.

Accordingly, the Committee's motions should be granted and respondent immediately suspended from the practice of law until such time as disciplinary proceedings have been concluded, and until further order of this Court.

SAXE, J.P., FRIEDMAN, GONZALEZ, SWEENY and CATTERSON, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until the further order of this Court.