[934 NYS2d 106]

In the Matter of ROBERT L. COHEN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 22, 2011

**APPEARANCES OF COUNSEL**

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Scott D. Smith* of counsel), for petitioner. *Michael S. Ross*, for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Robert L. Cohen was admitted to the practice of law in the State of New York by the Second Judicial Department on December 19, 1969. At all times relevant to this proceeding, respondent has maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee seeks an order, pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii), immediately suspending respondent from the practice of law based upon substantial admissions under oath and uncontested evidence of professional misconduct which immediately threaten the public interest. Specifically, the Committee asserts that during his deposition before the Committee, respondent admitted misappropriating and/or converting more than $9,800 in escrow funds for his own use without permission or authority to do so.

In April 2009, the Disciplinary Committee received a complaint against respondent from client Ms. T, alleging that in January 2005, she and her husband had entered into a contract of sale with an individual to purchase their house located in Brooklyn, New York. Respondent, as the sellers' attorney, was required to hold the $10,000 down payment in escrow pending the closing. In the summer of 2005, respondent's clients wrote letters to respondent expressing their dissatisfaction with the contract and allegedly respondent gave them the "run-around." In a letter to respondent, his clients asked him to cancel the contract of sale and return the $10,000 down payment to the purchaser. By that date, the balance in respondent's escrow account had fallen to $254.75, due to his impermissible use of the down payment funds.

Notwithstanding his clients' request, respondent wrote a "time is of the essence" letter to the purchaser's attorney, stating that the closing would take place on September 7, 2005 and that a failure to appear would be deemed a material breach and default, resulting in his clients retaining the $10,000. According to Ms. T, the closing, which was to have taken place on October 29, 2005, fell through because the purchaser obtained a mortgage loan for more than the contract allowed and respondent alerted Ms. T and her husband of his concerns of possible mortgage fraud. In or about late October 2005, the purchaser filed a civil action for damages against respondent's clients in Kings County, and, according to Ms. T, respondent told her husband that they should wait three years until the case was dismissed.

Almost three years later, in August 2008, Ms. T wrote to respondent asking about the status of the case and whether he still had the $10,000 down payment. Upon not hearing from respondent for five months, Ms. T wrote to him again in January and February 2009, requesting that he cancel the contract and return the down payment to the purchaser. On April 7, 2009, respondent replied to Ms. T, advising against releasing the money to the purchaser since the action could be restored to the calendar and, if the buyer prevailed, Ms. T and her husband might have to return the money. At the time respondent wrote this letter, the balance in his escrow account had dropped to $490.35. Respondent testified during his deposition he was aware of the low account balance at the time he wrote the letter, but that he planned on replacing the missing funds with personal funds. Ten days after respondent's April 7 letter, Ms. T filed her complaint with the Committee.

In July 2009, respondent provided the Committee with his bank statements for his escrow account (escrow account No. 1) in which he deposited the $10,000 down payment for the period January 2005 through July 2009 (the audit period). At that time respondent advised the Committee that Ms. T had received her $10,000 and he thought that was the end of it. Thereafter, the Committee subpoenaed the bank to obtain the full records for respondent's escrow account and for another escrow account (escrow account No. 2).

Respondent admitted during his deposition that he did not have a ledger for his escrow accounts, but rather, "in each file I had a record of monies I was holding." As the Committee notes, an attorney's failure to maintain a ledger or similar bookkeeping records is violative of Code of Professional Responsibility DR 9-102 (d) (22 NYCRR 1200.46 [d]). Using the bank records, the Committee's investigative accountant essentially created a ledger reconstructing transactions from both escrow accounts to identify the purpose of each transaction. A review of the escrow account records revealed a deposit of the buyer's $10,000 down payment on January 18, 2005, and over the next few months, several deposits and numerous withdrawals—many to American Express—were made into and out of the account. On July 5, 2005, a check for $25,228 was written to Sessler Mackin LLP, dropping the balance in respondent's account to $1,990.69, far below the $10,000 he was required to maintain in escrow for the real estate matter. In addition, at the time respondent wrote his August 30, 2005 "time is of the essence" letter to the buyer's

attorney, the balance in the account was about $255. Respondent's account balance remained below $10,000 until November 2005, but again fell below $10,000 one month later. Moreover, for a seven-month period beginning in September 2006 to April 2007, the balance in respondent's account fluctuated above and below $10,000 several more times, falling as low as $193.44.

During his deposition respondent addressed the depletion of the $10,000, testifying that he "just lost track of it," and he admitted that he did not have permission or authority to use the money, which he used for various purposes, including to pay his American Express bills and his attorneys-accountants Sessler Mackin relating to a federal tax lien against him filed in February 2009 for approximately $113,000 which, with the assistance of counsel, he had entered into an agreement with the IRS to pay. In addition to this misappropriation and/or conversion of funds, the bank records revealed that respondent paid his personal American Express bills using both escrow accounts, which the Committee points out was an improper use of his escrow account in violation of DR 9-102 (a) (22 NYCRR 1200.46 [a]). Respondent testified further that in or around May 2009 he returned the $10,000 to his clients, borrowing to pay back the money.

The Committee contends that the documentary evidence adduced from bank records shows that respondent misappropriated and/or converted escrow funds in violation of DR 1-102 (a) (4), (5) and (7) and DR 9-102 (b) (1) and (d) (1) and (2) of the Code (22 NYCRR 1200.3 [a] [4], [5], [7]; 1200.46 [b] [1]; [d] [1], [2]). The Committee seeks respondent's interim suspension arguing that respondent's sworn admissions of misconduct and the uncontested evidence of misappropriation and/or conversion of funds immediately threatens the public interest (see Matter of Jobi, 56 AD3d 158 [2008]; Matter of Blau, 50 AD3d 240 [2008]; Matter of Newman, 35 AD3d 23 [2006]).

Respondent's counsel has submitted an affidavit wherein he states that respondent has agreed that the best course of action at this point is to consent to the interim suspension, and then respondent will decide how he wishes to proceed.

As the bank records show that respondent failed to maintain intact funds in his escrow account and he admittedly used those funds to pay personal expenses, respondent poses an immediate threat to the public interest and should be immediately suspended from the practice of law pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii) (see Matter of Cherry, 39 AD3d 123 [2007];

*Matter of Martinez*, 37 AD3d 103 [2006]; *Matter of Tannen-baum*, 16 AD3d 66 [2005]; *Matter of Butler*, 241 AD2d 263 [1998]).

Accordingly, the Committee's motion should be granted and respondent suspended from the practice of law, effective immediately, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.

FREEDMAN, J.P., RICHTER, ABDUS-SALAAM, MANZANET-DANIELS and ROMÁN, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.