[825 NYS2d 1]

In the Matter of LAWRENCE B. NEWMAN (Admitted as LAWRENCE BRUCE NEWMAN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 10, 2006

## APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.

*Benjamin, Brotman & Associates, P.C.*, New York City (*Howard Benjamin* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Lawrence Bruce Newman was admitted to the practice of law in the State of New York by the First Judicial Department on January 28, 1974. At all times relevant to this motion, respondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee seeks an order pursuant to 22 NYCRR 603.4 (e) (1) (iii), immediately suspending respondent from the practice of law until further order of the Court based upon uncontested evidence of respondent's professional misconduct which threatens the public interest.

On or about May 23, 2005, the Committee received a complaint from Rakesh Barmecha, who is the president of a wholesale diamond sales business called NIRU which did business with A.G. Fancy, Inc. (AGF). In March 2004, respondent was retained to represent AGF in connection with an insurance claim for jewels that were stolen as a result of a robbery of AGF's jewelry store. AGF entered into an agreement with NIRU by which AGF assigned any potential insurance recovery to NIRU. By letter, respondent confirmed the assignment of the insurance proceeds to NIRU and agreed to act as escrow agent for all insurance proceeds, minus his fees and expenses.

Eventually, respondent commenced an action against the insurance company and on August 9, 2004, he received a payout of $190,000 which he deposited into his escrow account. Of that amount, respondent was required to hold $126,667 in escrow. According to Barmecha, despite repeated demands, respondent did not immediately disburse the funds to NIRU, thus allowing a creditor of AGF to serve AGF with a restraining notice in January 2005 prohibiting respondent from disbursing the funds. Barmecha also asserted that respondent made "excuses" for not immediately remitting the funds.

In his answer to Barmecha's complaint, respondent essentially agreed with Barmecha's recitation of the facts, however, he claimed he was "made aware" of the other creditor's claim against AGF before he received the insurance proceeds, and that he was advised that he had to obtain releases from the claimants before releasing the escrow funds. Respondent explained further that because the claimants were unable to

agree on a division of the insurance proceeds, he commenced an interpleader action "seeking to have the court resolve the various claims." Barmecha then filed his complaint with the Committee. The insurance matter was finally settled in court on June 10, 2005.

During their investigation of the complaint, the Committee asked respondent in October 2005 to show evidence that he had maintained the above-mentioned escrow funds intact from his receipt in August 2004 to the present, and to inform the Committee as to the location of the funds. In response, respondent wrote that on or about July 5, 2005, he had distributed the escrow funds totaling $126,667 to NIRU and the other claimant, and attached the escrow checks as proof. As evidence that he had maintained the funds intact, respondent provided his July 2005 bank statement showing that the balance in his account at the time of the issuance of the checks was about $1 million. As to the Committee's inquiry about the integrity of the funds, respondent assured the Committee that "there was never any question about the integrity of the escrow, only who it should be paid to." Accordingly, respondent urged the Committee to dismiss the complaint because he did nothing wrong.

On October 25, 2005, the Committee asked respondent to submit all of his escrow account records from August 2004 (when he received the insurance payout) through June 2005, to show that the funds had remained intact the entire time. Despite this letter and several other requests, respondent did not turn over his records.

Consequently, on January 17, 2006, the Committee served both respondent and his bank with a subpoena duces tecum directing them to provide the relevant escrow records pursuant to Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46); both of them complied. In his cover letter attached to the records, respondent explained that he did not maintain a contemporaneous ledger which identified the transactions in the escrow account. Thus, the Committee commenced an audit, using bank statements, canceled checks, deposit slips and information provided by respondent to reconstruct the account transactions and to identify the purpose of each transaction.

Due to respondent's failure to account for every transaction, there were unidentified disbursements from his account totaling more than $1.3 million, the majority of which ($1 million) were checks issued by respondent to himself. Although respondent is cooperating in the Committee's ongoing efforts to

identify the transactions, he is still unable to identify a number of them, including the checks to himself.

Notably, contrary to respondent's assertions to the Committee in October 2005 that he maintained the escrow funds intact from August 2004 to June 2005, the bank records show that after he deposited the $190,000 insurance check on August 9, 2004, the balance in his account steadily declined below $126,667 (the amount he was required to maintain intact until the dispute over the funds was resolved in July 2005). Indeed, by October 18, 2004, just over two months after he had deposited the funds into his escrow account, the balance in the account had fallen to $25,522.44. Thus, it is plain that the transactions that depleted the NIRU escrow funds were unrelated to the NIRU case.

Although respondent has admitted that this is true, in oral communications with the Committee, respondent's counsel has urged that the depletion of the funds was as a result of his failure to maintain a ledger and, therefore, he did not intentionally misuse the escrow funds. Nonetheless the Committee still argues that respondent depleted $100,000 in escrow funds without permission or authority to do so in violation of the Code of Professional Responsibility. Notably, between his deposit of the insurance funds in August 2004 and October 18, 2004 (when the balance fell to $25,522.44) respondent issued a total of $267,742 in checks from his escrow account, including $144,000 in 15 separate checks to himself. To date, respondent has failed to explain the purpose of even one of those checks to himself, claiming that he is unable to do so.

Accordingly, the Committee now seeks respondent's interim suspension based upon uncontested evidence that he converted and/or misappropriated more than $100,000 in escrow funds, he failed to remit the funds to NIRU immediately upon Barmecha's demand for the funds when he had not been served with a restraining notice, he failed to maintain a ledger for his escrow account, he is currently unable to account for more than $1.3 million in disbursements from his escrow account, including more than $1 million in checks to himself, and he falsely assured the Committee that the escrow funds had always remained intact, in violation of DR 1-102 (a) (4), (5) and (7) and DR 9-102 (a) and (d) (1) (22 NYCRR 1200.3, 1200.46; see Matter of Kohn, 18 AD3d 96 [2005] [interim suspension based on uncontested evidence of intentional conversion]). Furthermore, in light of the above evidence, the Committee suggests this Court reject

respondent's contention that the escrow funds did not remain intact due to poor accounting (*Matter of Tannenbaum*, 16 AD3d 66 [2005] [interim suspension based upon, among other things, uncontested evidence of misappropriation of $320,000, and deception about the misappropriation]). The Committee also argues that even if the uncontested evidence is deemed by this Court to establish only misappropriation under DR 9-102 (a), an interim suspension is still warranted and respondent's actions immediately threatens the public interest (*Matter of Rohrberg*, 268 AD2d 180 [2000] [interim suspension based on, among other things, evidence of commingling and misappropriation of more than $4,000 and deception of the Committee to conceal the misappropriation]).

Respondent states in opposition and mitigation that he is 60 years old, he has never been disciplined, his solo practice is primarily involved in litigation in the diamond and jewelry industry, that over the years, every client has received their settlement proceeds and, even now, the Committee does not allege that any of his clients have not received their settlement funds. Respondent blames the circumstances at bar on the illness of his long-time accountant and other personal problems both of which occurred in the early part of 2004. Due to these problems, respondent avers that he did not concentrate on the day-to-day operation of his office. Without an accountant, respondent began depositing settlement funds into his escrow account and then remitting to the client their share. He admits that he did not withdraw his fees from the account on a timely basis. Instead, he wrote checks as needed, believing at all times that he was withdrawing his earned fees. He denies deceiving the Committee as to the integrity of the funds, since he believed at all times that the $126,667 remained intact in his escrow account. However, in his affidavit respondent admits: (1) he misappropriated approximately $100,000 in escrow funds and used it for his personal purposes without authorization; and (2) he failed to account for a multitude of escrow account disbursements and failed to maintain his escrow account records as required under DR 9-102. Hence, respondent essentially admits that he commingled his fees with client funds in violation of DR 9-102 (a), and used his escrow account as a personal account in violation of DR 9-102 (b) (1). The only portion of the Committee's motion denied by respondent is that he intentionally converted the aforementioned escrow funds, and that he deceived the Committee by averring that the monies had always

been intact. Despite these admissions, respondent asserts that this one, inappropriate incident during a stressful period in his personal life over a 30-year unblemished career does not make him a threat to the public interest requiring an interim suspension.

We find that respondent's admitted conduct alone warrants immediate suspension. The documentary evidence and respondent's admissions establish that he has committed professional misconduct. Specifically, respondent has, at the very least, commingled client funds with his own funds and misappropriated approximately $100,000 in escrow funds in violation of DR 9-102 (a) and (b) (1). Moreover, respondent has admitted not maintaining escrow account records that attorneys are required to maintain under DR 9-102 (d).

Furthermore, although respondent denies intentionally converting escrow funds in violation of DR 1-102 (a) (4) and there are no allegations that a client has not received settlement funds, respondent's inability to identify and account for approximately $1.3 million in disbursements from his escrow account, including more than $1 million in checks to himself, is disturbing. Lastly, at this juncture, it is still unclear whether respondent may have failed to promptly deliver requested funds to NIRU or asserted falsely to the Committee that those funds remained intact.

The Committee has met its burden of showing that respondent's mishandling of his escrow account constitutes professional misconduct warranting his immediate suspension from the practice of law (*see Matter of Goldman*, 7 AD3d 18 [2004]; *Matter of Rohrberg, supra*, 268 AD2d 180 [2000]; *Matter of Gallancy*, 219 AD2d 298 [1996]).

Accordingly, the Committee's motion pursuant to 22 NYCRR 603.4 (e) (1) (iii) should be granted and respondent suspended from the practice of law, effective immediately, until further order of this Court.

BUCKLEY, P.J., SAXE, WILLIAMS, SWEENY and MALONE, JJ., concur.

Respondent suspended from the practice of law, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.