[869 NYS2d 428]

In the Matter of JEFFREY D. FLETCHER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 16, 2008

## APPEARANCES OF COUNSEL

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Kevin P. Culley* of counsel), for petitioner.

No appearance for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Jeffrey D. Fletcher was admitted to the practice of law in the State of New York by the First Judicial Department on September 24, 1998 and, although the Committee believes respondent no longer maintains a law office within this state, this Court maintains jurisdiction over him, pursuant to 22 NYCRR 603.1, based upon his last known business address, which was located within the First Judicial Department.

The Departmental Disciplinary Committee (the Committee) now seeks an order, pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii), immediately suspending respondent from the practice of law until further order of the Court due to his failure to cooperate with the Committee's investigation and uncontested evidence of professional misconduct which threatens the public interest. Specifically, respondent has failed to cooperate with the Committee's investigation into four complaints filed against him alleging the failure to promptly return client escrow funds related to four separate real estate transactions. Moreover, bank records show that respondent has misappropriated client and third-party funds related to these transactions.

In September 2007, the Committee opened an investigation into respondent's conduct after receiving a complaint alleging that he failed to promptly return escrow funds involving the sale of his client's late parents' home. Pursuant to the complaint, on October 26, 2006, respondent received the buyers' down payment of $82,000 and the closing took place on November 30, 2006. The next day, respondent deposited the net proceeds from the sale into his escrow account from which he was to make additional disbursements relating to the transaction, and from which he was to disburse a monthly rent of $1,000 on behalf of his client who had received permission from the new owner to remain in the house for a period of time after the closing in exchange for the monthly rent. Several months after the closing, however, respondent failed to pay the rent to the new owners in a timely manner and delayed payment of a share of the net proceeds to his client. It appears that respondent still owes the complainant's sister a balance of approximately $10,000, and when respondent failed to respond to numerous telephonic and e-mail messages asking for an explanation, the disciplinary complaint was filed.

The Committee, due to respondent's failure to cooperate, subpoenaed respondent's escrow account records. The bank statements indicate that on 13 separate occasions, from the date respondent deposited the $82,000 down payment to the date of the closing, the escrow account balance fell below the amount he was required to maintain on behalf of his clients, from $82,000 to $9,406.01. In addition, from December 1 to December 27, the account balance was $16,222.58, far below the $36,827.26 he was required to maintain after he made disbursements. After December 27, the balance fell below the amount he was required to hold on his client's behalf five more times to a negative balance of -$994.44 on January 29, 2007. In addition, from January 16 to February 28, 2007, respondent improperly negotiated from his escrow account nine checks written to "cash" totaling $2,445.

In December 2007, the Committee received a complaint also alleging respondent's failure to promptly return client escrow funds in the amount of $4,770.05, which he was holding in connection with the client's purchase of a co-op apartment. The client explained that as a result of having brought a surplus of funds to the closing on August 14, 2007, the title company refunded her monies in a check made payable to respondent "as attorney," to be deposited into his escrow account and then disbursed to his client. Following the closing, however, respondent failed to return her funds for several months and ignored her attempts to communicate with him about the matter.

Subsequent to the filing of a complaint in December 2007, respondent, without ever communicating with the client, returned the funds via a wire transfer to the client's bank account on January 22, 2008. The escrow records show, however, that after respondent deposited the client's $4,770.05 into his account on August 15, 2007, his account balance had dropped to $4,225.37 by September 11. By September 21, the balance fell eight more times to $852.56, well below the amount he was required to maintain on her behalf. During that time period respondent also wrote 11 checks to "cash" in the aggregate sum of $1,900.

In March 2008, the Committee received a complaint asserting that respondent failed to promptly return client funds in the amount of $16,500, which respondent had deposited into his escrow account on October 19, 2007 in connection with the client's purchase of a cooperative apartment. Pursuant to the complaint, after entering into a contract in September 2007, the co-op board rejected the client's application, thereby terminat-

ing the contract. Respondent ignored numerous telephone calls made by the client and failed to refund his contract deposit. Further, a copy of the contract of sale indicates that respondent is listed as attorney for both the seller and purchaser.

Respondent's escrow account records demonstrate that from October 19, 2007, the date he deposited the client's $16,500 down payment, to December 31, 2007, the account balance fell to $10,940.37. From December 31 to January 24, 2008, the balance fell 19 more times to a negative -$579.15. In addition, from October 22, 2007 to January 22, 2008, respondent negotiated 23 escrow checks written to "cash" totaling $7,000.

A fourth complaint was received by the Committee in May 2008, once again alleging respondent's failure to promptly return a down payment for the purchase of a co-op in the amount of $32,900. Like the previous complaint, the complainant also alleged that his contract to purchase the apartment was terminated by the co-op board's rejection of his application in March 2008. Respondent, who represented the seller, has allegedly failed to return the purchaser's contract down payment and has ignored the complainant's attorney's phone calls and letters demanding the return of the funds. Respondent's escrow account statements show that on December 18, 2007, he deposited the complainant's $32,900 down payment into his escrow account and on December 31, the balance had fallen to $10,940.37. The balance dropped further to a negative balance of -$579.15 on January 24, 2008.

In conjunction with the foregoing, respondent has not responded to the Committee's numerous letters sent from January to June 17, 2008 to his business and home addresses seeking answers to the four complaints filed against him and the production of his bookkeeping records. One letter also requested that he appear for a deposition on April 7, 2008. Copies of letters sent to his New Jersey home address were returned with a notation that he had moved without a forwarding address. The Committee also placed numerous calls to respondent's business and cellular telephone numbers. Although messages were left, respondent never made contact with the Committee and eventually his cell phone ceased accepting calls. On March 26, 2008, the Committee spoke with respondent's brother by telephone, and he advised that he had not communicated with respondent in several months and did not know his current whereabouts. Further, an attorney who rented space in the same office suite as respondent informed the Committee that respondent had not

been at that address for many months. Respondent has further frustrated the Committee's efforts to locate him by failing to advise OCA of changes in his addresses and telephone numbers as required by Judiciary Law § 468-a.

As a result, by unpublished order entered August 21, 2008, Presiding Justice Lippman, acting pursuant to Judiciary Law § 90 (6) and 22 NYCRR 601.1, directed service of the Committee's present motion to suspend upon respondent by publication in the New York Law Journal, which was effected on September 17, 2008. Service was also effectuated by mailing a copy of the motion to his last known home and business addressees.

This Court, pursuant to 22 NYCRR 603.4 (e) (1), may suspend an attorney from the practice of law pending consideration of charges of professional misconduct, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest. Such a finding may be based upon:

"(i) the attorney's default in responding to the petition or notice, or the attorney's failure . . . to comply with any lawful demand of this Court or the Departmental Disciplinary Committee made in connection with any investigation, . . . or . . .

"(iii) other uncontested evidence of professional misconduct" (22 NYCRR 603.4 [e] [1]).

It appears that respondent has failed to notify the Office of Court Administration of changes of address and telephone numbers to both his business and home and, according to OCA records, he last registered and paid his biennial attorney registration fee in June 2007, which was untimely, and he is currently delinquent. Attorneys are required to notify OCA of any changes to their addresses and telephone numbers within 30 days (see Judiciary Law § 468-a), and failure to do so "shall constitute conduct prejudicial to the administration of justice and shall be referred" for appropriate disciplinary action (Judiciary Law § 468-a [5]). The Committee, therefore, argues that respondent's failure to register with OCA and to keep his attorney registration information current has frustrated its efforts to contact him with respect to the four complaints filed against him and has contributed to his failure to cooperate, thus serving as a basis for his immediate suspension. Indeed, notwithstanding the Committee's numerous efforts, through various channels, and having given respondent every opportunity to cooperate, respondent has evaded the Committee's investigation by failing to submit answers to the disciplinary

complaints, produce relevant files and documents, or appear for a deposition as directed by the Committee. Accordingly, respondent's immediate suspension based upon his failure to cooperate with the Committee's investigation is warranted (*see e.g. Matter of Kaplan*, 49 AD3d 107 [2008]; *Matter of Benzing*, 43 AD3d 163 [2007]).

The Committee, as another ground for immediate suspension, maintains that respondent's escrow account records, which the Committee was forced to subpoena from the bank, provide uncontroverted evidence of professional misconduct, namely, that he misappropriated client and third-party escrow funds and wrote checks to "cash" from his escrow account that totaled $11,000. As noted above, respondent's misappropriation took the form of depositing funds belonging to the four complainants into his escrow account and almost immediately thereafter, the balance in his account would fall below the amount he was required to maintain on their behalf. Indeed, at times, his mishandling of his escrow account even led to a negative balance. Accordingly, respondent's uncontroverted misappropriation of client and third-party funds compels immediate intervention by this Court for the protection of the public (*see e.g. Matter of Blau*, 50 AD3d 240 [2008]; *Matter of Caro*, 40 AD3d 43 [2007]).

Accordingly, the Committee's motion should be granted and respondent immediately suspended from the practice of law, pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii), and until further order of the Court.

TOM, J.P., NARDELLI, SWEENY, McGUIRE and DEGRASSE, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.