[33 NYS3d 154]

In the Matter of AARON ARI AFILALO, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 12, 2016

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.

*Sarah Diane McShea*, for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Aaron Ari Afilalo, was admitted to the practice of law in the State of New York by the First Judicial Department on January 23, 1995. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.

The Departmental Disciplinary Committee (Committee) seeks an order, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.4 (e) (1) (iii), immediately suspending respondent from the practice of law until further order of this Court, based upon uncontested evidence, namely, written admissions and bank records, that he, inter alia, misappropriated client funds, which misconduct immediately threatens the public interest.

By cross motion, respondent requests an order denying the Committee's motion; staying the Committee's investigation until May 15, 2016 for medical reasons, and under such conditions as this Court shall impose; and sealing the motion and cross motion papers.

In October 2014, the Committee opened an investigation into respondent's professional conduct after receiving information from the Lawyers' Fund for Client Protection that a check for $15,914.93 drawn against respondent's IOLA account was dishonored due to insufficient funds. Between October 2014 and August 2015, in response to the Committee's requests, respondent submitted written responses and account records, including reconstructed ledgers.

Respondent is a tenured professor at Rutgers School of Law, who also maintains a transactional law practice. In two instances, respondent withdrew IOLA funds that did not belong to him in order to meet his personal and business expenses. In one instance, in December 2013, respondent received a $220,000 contract deposit on behalf of his client, the seller in a real estate transaction, which he deposited into his IOLA account. Between January 2 and February 14, 2014, when the transaction closed, respondent repeatedly invaded the $220,000 contract deposit such that, as of February 11, 2014, his account balance had fallen to $500. Respondent replenished the funds he withdrew with funds from his two operating accounts.

In the second instance, on August 5, 2014, respondent deposited a $100,000 contract deposit he received from his clients, a married couple, whom he represented in connection with their purchase of a condominium; he deposited the funds into his IOLA account. At the time, respondent was holding $10,395.96 on behalf of another client in his IOLA account. Between August 5 and August 20, 2014, when the transaction closed, respondent invaded the IOLA funds by making transfers to his business and personal accounts such that, as of August 14, 2014, his account balance had fallen to $74,495.96.

On the same day as the closing, respondent replenished the funds he withdrew by transferring funds from his two operating accounts. Nonetheless, an IOLA check in the amount of $15,914.93, representing the payment of a flip tax, was dishonored due to insufficient funds; this is the dishonored check that precipitated the Committee's investigation. On September 23, 2014, respondent replaced this check with a bank cashier's check drawn against his IOLA account.

Respondent's documentary responses also reveal that he commingled client funds with his personal and business funds, failed to maintain required IOLA account records, and, on one occasion, made a cash withdrawal from his IOLA account for $1,500.

In response to the Committee's requests, respondent submitted written responses wherein he vigorously denied that he intentionally converted client funds, and explained that, due to his ignorance and misunderstanding of the escrow rules, during the period at issue, he mistakenly believed that he could withdraw and use client or third-party funds in his IOLA account as long as he had the same amount of funds on deposit in one of his other non-IOLA accounts, which he contended was

always the case. Respondent explained that he had sufficient funds in personal liquid assets in his and his wife's personal accounts, but he was reluctant to frequently withdraw funds from these accounts because he wanted to avoid conflict with his wife.

In mitigation, respondent explains in his cross motion that his misconduct on the aforementioned transactions occurred in the midst of significant personal and family health problems. In particular, in September 2009, both respondent's wife and brother suffered from significant medical conditions. As a result of his personal and family situation, respondent took an unpaid leave from his teaching position for the 2010-2011 academic year. In or about 2012, respondent also started seeing a psychiatrist approximately three times a week. Respondent's health problems caused him to take a second leave of absence from his teaching position in the fall of 2014 that continued into 2015. Respondent has been under Dr. Carol J. Weiss's care since March 2015. Dr. Weiss opines that respondent "is not yet in a position where he can manage the stresses of the disciplinary investigation and proceeding" and thus "it would be in his best medical interest for him to have additional recovery time, such as three to four months, before he faces such additional stresses."

In January 2016, respondent resumed his teaching duties but instead of teaching two courses, as he normally would, he now teaches only one course; further, he claims that he has "reduced [his] side practice significantly." Respondent also asserts that he has taken extensive remedial measures to prevent a recurrence of his misconduct, including the retention of an escrow monitor. Specifically, in November 2015, respondent entered into a monitoring agreement with attorney Michael J. Wildes, whereby Wildes has agreed to monitor respondent's IOLA account on a monthly basis, beginning with the month of September 2015, and to submit quarterly reports to respondent's current counsel and the Committee.

For the foregoing reasons, respondent requests that this Court deny the Committee's motion for an interim suspension and, based on Dr. Weiss's recommendation, briefly stay the Committee's investigation until May 15, 2016 for medical reasons (not pursuant to 22 NYCRR 603.16 [c] [1]), and upon such conditions as it may direct. Respondent also requests that the motion and cross motion papers be sealed because they contain his personal medical and financial information which should not be available to the public.

In reply, the Committee argues that it has presented sufficient evidence to conclude that respondent intentionally converted client funds, which presumptively warrants disbarment, and, therefore, an interim suspension is appropriate; respondent's purported mistaken belief that he could use the IOLA funds at issue is not credible given his status as a tenured law professor; the evidence indicates that respondent intentionally chose to invade his IOLA account to meet his personal and business obligations because he did not want to withdraw funds from his and his wife's joint personal accounts which would have caused marital strife; it is premature to reach a conclusion as to respondent's proffered mitigation, and the record, as it now stands, does not establish a sufficient causal connection between his medical issues and misconduct.

The Committee further argues that respondent's presentation of a voluntary escrow monitoring agreement with Wildes, with whom he allegedly shares office space, is not a basis to deny its interim suspension motion because the Committee did not request such an arrangement; nor is there a basis under the Court rules or case law for utilizing such a measure to avoid an interim suspension.

In addition, the Committee points to the fact that respondent does not assert that he is unable to defend himself in disciplinary proceedings, thereby requiring a medical suspension under rule 603.16 (c) (1). Rather, he requests a temporary stay solely to avoid the stress inherent in any disciplinary proceeding. The Committee argues that there is no basis for such relief under the Court rules and case law, and granting such here would create precedent which could potentially be misused to stall disciplinary investigations.

22 NYCRR 603.4 (e) (1) (iii) provides, in pertinent part:

> "[a]n attorney who is the subject of an investigation . . . by the Departmental Disciplinary Committee of professional misconduct . . . may be suspended from the practice of law, pending consideration of the charges against the attorney, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest. Such a finding shall be based upon . . . (iii) other uncontested evidence of professional misconduct."

■ The record sufficiently establishes that respondent repeatedly misappropriated and/or converted client funds,

repeatedly commingled personal and client funds, and failed to keep required IOLA account records (*see e.g. Matter of Getreu*, 113 AD3d 148 [1st Dept 2013] [interim suspension imposed based on bank records and the respondent's admissions that he misappropriated client funds, commingled personal and client funds, and failed to keep required account records, notwithstanding personal issues]; *Matter of Kennedy*, 87 AD3d 107 [1st Dept 2011] [interim suspension based on bank records and admissions that the respondent misappropriated third-party funds and failed to keep required account records]; *Matter of Caro*, 40 AD3d 43 [1st Dept 2007] [interim suspension based on uncontroverted documentary evidence that the respondent deposited clients' funds into his business account and used those funds to pay for business and personal expenses; the respondent consented to an interim suspension]; *Matter of Newman*, 35 AD3d 23 [1st Dept 2006] [interim suspension, based on bank records, for misappropriating approximately $100,000 in escrow funds, commingling, and failing to keep required records, notwithstanding personal issues]).

Contrary to respondent's allegations, *Matter of Salo* (77 AD3d 30 [1st Dept 2010]) does not mandate a different result. Unlike in *Matter of Salo*, here, respondent knew all along he was invading IOLA funds. Respondent does not allege that his personal and family health issues rendered him unaware that he was invading IOLA funds. Rather, he admittedly invaded his clients' funds under the purportedly mistaken belief that IOLA funds and his personal funds were essentially interchangeable. While respondent's personal situation evokes sympathy, it is not relevant to the merits of the Committee's motion. When the Committee brings formal charges and a hearing is held, respondent will have the opportunity to present his personal and family health issues in mitigation.

██ We grant respondent's cross motion to the limited extent of redacting the bank account numbers in the financial information included in the motion and cross motion papers. This Court usually does not grant sealing requests with respect to medical information, except in compelling situations, unlike here, involving remarkable medical situations (*Matter of Scher*, 59 AD3d 47 [1st Dept 2008]), or to prevent an alleged stalker from obtaining relevant information (*Matter of Stanch*, 35 AD3d 18 [1st Dept 2006]; *compare Matter of Farinella*, 91 AD3d 35 [1st Dept 2011] [request to seal medical information]). Nor has respondent presented a compelling reason to stay the Com-

mittee's investigation until May 15, 2016. In fact, as noted, respondent does not assert that his personal and family health issues make it impossible for him to adequately defend himself, thereby requiring a medical suspension under 22 NYCRR 603.16 (c) (1).

Accordingly, the Committee's motion should be granted and respondent suspended from the practice of law, pursuant to 22 NYCRR 603.4 (e) (1) (iii), effective immediately, and until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court. We further grant respondent's cross motion to the limited extent of redacting the bank account numbers in the financial information included in the motion and cross motion papers.

TOM, J.P., MAZZARELLI, RENWICK, MANZANET-DANIELS and KAPNICK, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.