Matter of Pierre (2017 NY Slip Op 06054)





Matter of Pierre


2017 NY Slip Op 06054


Decided on August 8, 2017


Appellate Division, First Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 8, 2017
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

John W. Sweeny, Jr.,Justice Presiding,
Angela M. Mazzarelli
Troy K. Webber
Marcy L. Kahn
Cynthia S. Kern, Justices.


 [*1]In the Matter of W. Marilynn Pierre, an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, W. Marilynn Pierre, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, W. Marilynn Pierre, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on October 24, 2001.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Yvette A. Rosario, of counsel), for petitioner.
Respondent pro se.
M-6540, C


PER CURIAM


Respondent W. Marilynn Pierre was admitted to the practice of law in the State of New York by the Second Judicial Department on October 24, 2001. At all times relevant to this proceeding, respondent has maintained an office for the practice of law within the First Judicial Department.
The Attorney Grievance Committee (the Committee) seeks an order pursuant to the Rules for Attorney Discipline Matters (22 NYCRR) § 1240.9(a)(2), (4), and (5), immediately suspending respondent from the practice of law based upon substantial admissions under oath [*2]and uncontested evidence of professional misconduct which immediately threatens the public interest. The Committee asserts that, during her deposition before the Committee, respondent admitted to commingling client funds with her own, using her escrow account as an operating account, and evading tax liens, and that the uncontroverted evidence reflects that respondent converted and/or misappropriated guardianship funds and failed to satisfy a judgment entered against her in favor of a former client.
Respondent cross-moves, pursuant to 22 NYCRR 1240.11, for a stay of the Committee's investigation and of this proceeding, and for an order directing her to complete an appropriate treatment and monitoring program approved by this Court in lieu of suspension. Respondent argues that the alleged misconduct occurred during a time when she was homeless and suffered from bulimia, depression, and attention deficit disorder, all of which affected her ability to practice law.
The Committee began investigating respondent's professional conduct in response to the first of four notices from The Lawyers' Fund for Client Protection stating that electronic payments from respondent's IOLA account had been returned for insufficient funds. The investigation also embraced a complaint by a former client who had hired respondent to prepare and file a motion. That client brought an action in New York County Small Claims Court, alleging that respondent failed to perform the work and seeking a return of an unearned fee. Upon respondent's default, the court entered a $2,000 judgment against her. The investigation expanded further to include a January 15, 2016 letter from the Managing Inspector General for Fiduciary Appointments (the Guardianship Complaint), informing the Committee that respondent had been taken off the list of qualified applicants for guardianship appointments after she was removed as guardian in several guardianship proceedings. The reasons for the removals were her failure to comply with reporting requirements and render accountings, in addition to her making unauthorized withdrawals from the guardian accounts. Respondent was surcharged by the court in each of those proceedings as a result of the improper withdrawals. A fourth ward died while respondent was still acting as his guardian, but respondent made withdrawals from the account even after his death.
The Committee's chief investigator discovered that respondent had state and federal tax liens from 2008 through 2013 totaling approximately $46,832. The Committee subpoenaed respondent's personal, trust, and business account records from her bank for June 2013 through June 2016, to determine whether she was misappropriating and/or commingling client funds and shielding assets from tax authorities. The bank's records revealed that respondent had a checking account, an IOLA trust account, and a separate guardianship account for each ward. The Committee discovered that respondent deposited her legal fees into the escrow account and made cash withdrawals from it in varying amounts on different days. Respondent also wrote checks from the escrow account for personal and business expenses, including, inter alia, laundry and office space. As of June 30, 2016, there was an 81¢ balance in respondent's escrow account.
In a deposition given to the Committee, respondent admitted using her escrow account as an operating expense account for her law practice and to pay for personal expenses. Respondent believed that she could pay for her operating expenses through her escrow account. Respondent deposited payments for per diem work into her escrow account and withdrew cash from it upon earning her fee. After realizing the impropriety of treating her escrow account as an operating account, respondent opened a checking account. However, respondent did not leave money there, because she was afraid the tax authorities would seize it. Respondent claimed that she was attempting to work out a settlement with the IRS. With regard to the complaints based on attempted payments that were not backed by sufficient funds, respondent believed that the payments did not clear because her clients' checks bounced and/or did not clear in time.
With respect to the judgment, respondent testified that her former client paid her over $2,000 and she met with him and went to court on his behalf. At the time of her deposition (two weeks after entry of the judgment), respondent had not yet discussed it with the client. Respondent testified that she wanted to enter into a payment arrangement with him but that given [*3]her tax debt he was "going to have to wait in line." Finally, during her deposition, respondent could offer no justification for the withdrawals from the guardianship accounts.
Pursuant to 22 NYCRR 1240.9(a), this Court may suspend an attorney from the practice of law, "on an interim basis during the pendency of an investigation or proceeding on application or motion of a Committee ... and upon a finding by the Court that the respondent has engaged in conduct immediately threatening the public interest" (22 NYCRR 1240.9[a]). The Committee seeks respondent's interim suspension based upon three of the grounds enumerated under 22 NYCRR 1240.9(a):
"(1) respondent's admission under oath to the commission of professional misconduct" (22 NYCRR 1240.9[a][2]);
"(2) respondent's willful failure or refusal to pay money owed to a client, which debt is demonstrated by an admission, judgment, or other clear and convincing evidence" (22 NYCRR 1240.9[a][4]); and
"(3) other uncontroverted evidence of professional misconduct" (22 NYCRR 1240.9[a][5]).
Respondent's admissions, bank records, the judgment obtained against her by her former client and her activities with respect to the guardianship accounts, all establish that respondent has committed the professional misconduct of which she is accused. Respondent improperly treated her escrow account as an operating account, commingled client funds with her own, and used the escrow account to avoid a seizure by tax authorities (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.15[b][prohibition against commingling client funds], rule 8.4[c][conduct involving dishonesty, fraud, deceit or misrepresentation], and rule 8.4[h] [conduct that adversely reflects on the lawyer's fitness as a lawyer]). This conduct supports an immediate, interim suspension (see Matter of Anderson, 123 AD3d 86 [1st Dept 2015]; Matter of Powell, 263 AD2d 121 [1st Dept 1999]; Matter of Butler, 241 AD2d 263 [1st Dept 1998]).
An interim suspension is also warranted based on respondent's mishandling of guardianship funds (see Matter of Roth, 131 AD3d 314 [1st Dept 2015]; Matter of Getreu, 113 AD3d 148 [1st Dept 2013]; Matter of Newman, 35 AD3d 23 [1st Dept 2006]). Finally, respondent's willful failure to satisfy the judgment owed to her former client, in violation of rule 8.4(d) of the Rules of Professional Conduct, constitutes another basis for immediate suspension from the practice of law (see 22 NYCRR 1240.9[a][4]; Matter of Bloodsaw, 87 AD3d 190 [1st Dept 2011]; Matter of Holubar, 73 AD3d 214 [1st Dept 2010]).
In arguing against an interim suspension, and in support of her cross motion for a stay of this proceeding and for diversion to a treatment program in lieu of discipline, respondent asserts that the alleged misconduct occurred when she suffered from bulimia, depression, and ADD, and experienced homelessness, affecting her ability to practice law, and submits supporting documentation, including proof of medical treatment. This includes treatment by a psychiatrist who evaluated respondent and diagnosed her with an unspecified eating disorder, major depressive disorder, and Attention Deficit Hyperactivity Disorder. Respondent further states that, through the Lawyers' Assistance Program (LAP), she entered into a six-month monitoring period for food disorder and mental health. The agreement requires respondent to, inter alia, undergo psychiatric evaluation, attend weekly therapy sessions, and have a sponsor. Respondent maintains that she has complied with the LAP Agreement's requirements. Although she initially delayed receiving treatment due to a lack of health insurance, respondent maintains that she is currently insured and has scheduled many medical appointments, meets regularly with a mental health therapist, and attends numerous group meetings, some weekly. She further asserts that she had no venal intent.
Respondent's struggles are insufficient to stave off an interim suspension. Two of her health care providers connect her mental health condition to her ability to manage her finances, and [*4]subsequently to her escrow account improprieties, and posit that her positive progress in treatment augurs a less problematic future. However, they do not attempt to attribute the other, more serious professional lapses, including commingling of funds, conversion and/or misappropriation of client funds, use of her escrow account to avoid seizure by tax authorities, and failure to satisfy a judgment, to her conditions (see Matter of Afilalo, 139 AD3d 175, 180 [1st Dept 2016]; Matter of Auslander, 74 AD3d 93, 95 [2010]).
Accordingly, the Committee's motion should be granted, respondent's cross motion denied, and respondent suspended from the practice of law, effective immediately, and until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court.
All concur.
Order filed.
August 8, 2017
Sweeny, J.P., Mazzarelli, Webber, Kahn, Kern, JJ.
Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court. Cross motion denied. Opinion Per Curiam. All concur.