Matter of Goldsmith (2018 NY Slip Op 01423)





Matter of Goldsmith


2018 NY Slip Op 01423


Decided on March 1, 2018


Appellate Division, First Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 1, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter Tom,Justice Presiding,
Rosalyn H. Richter
Barbara R. Kapnick
Cynthia S. Kern
Peter H. Moulton, Justices.


&em;

[*1]In the Matter of Matthew H. Goldsmith, (admitted as Matthew Harris Goldsmith), an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Matthew H. Goldsmith, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Matthew H. Goldsmith, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on February 11, 2004.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Yvette A. Rosario, of counsel), for petitioner.
Respondent pro se.



PER CURIAM


Respondent Matthew H. Goldsmith was admitted to the practice of law in the State of New York by the Second Judicial Department on February 11, 2004, under the name Matthew Harris Goldsmith. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.
The Attorney Grievance Committee (Committee) seeks an order pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9(a)(1), (3) and (5), immediately suspending respondent from the practice of law until further order of the Court, due to his failure to appear pursuant to subpoena and to comply with lawful demands of the Committee, and other uncontroverted evidence of professional misconduct. Specifically, the Committee's motion is based on uncontested evidence that respondent converted/misappropriated and commingled client funds and failed to cooperate with the Committee's investigation of two complaints.
On or about November 4, 2016, a client of respondent's filed a complaint against him alleging that in April 2012, he retained respondent to represent him in a breach of contract action against a company. In November 2012, a judgment was entered against the defendant company for $15,603.44 plus interest but respondent was unable to locate the company to collect the funds. In July 2016, respondent emailed his client stating that he had collected half of the funds by freezing the defendant's bank account, anticipated recovering the remainder, and would update the client further in the following weeks.
In August 2016, respondent emailed his client that he had recovered the entire judgment, but that the defendant was attempting to contest the levy. Respondent further informed his client that he hoped to resolve the issue quickly and would know more later that week. The client alleged that numerous phone calls to respondent's office and cell phone went unanswered and respondent's secretary informed the client that she had relayed all his messages to respondent. In mid-September, the client emailed respondent requesting an update on the funds but respondent did not reply.
On December 1, 2016, the client received a check from respondent for $16,512.59 but it was returned for insufficient funds. On January 11, 2017, the client received a second check for the same amount that was also returned for insufficient funds.
On January 19, 2017, the client emailed a paralegal at respondent's firm, requesting a cashier's check. The paralegal replied that respondent had instructed her to inform the client that if he withdrew his complaint, a bank check would be sent to him. That same day, respondent emailed his client directly:
"Stop contacting my paralegal and contact me directly. If you want a cashier's check for the amount fine, but then discontinue your proceedings. If they are open, then I'll deal with the court directly and will seek to reopen your case ... since they claim that you should be paid less, it's really up to you. Do not contact my paralegal again, and cease your threats or you will be looking at a lawsuit against you - DO I MAKE MYSELF CLEAR?"
In March 2017, the client notified the Committee that he had received a cashier's check from respondent for the full amount.
On December 19, 2016, the Committee received a complaint from a woman alleging that her son had retained respondent on her behalf regarding her illegal eviction. Court documents reflect that after the defendant failed to appear in the action, the court awarded respondent's client a total of $224,339.81 in damages. The client believes that respondent received "a judgment" without informing her. Since October 2016, respondent has stopped answering her calls, letters and emails inquiring about her case and judgment.
The Committee first wrote respondent on December 6, 2016, requesting an answer to the November 2016 complaint within 20 days. He did not respond. On January 9, 2017, the Committee sent two letters to respondent's office. The first letter asked for a response to the November 2016 complaint within 10 days and advised that his continued noncooperation could expose him to suspension and/or formal charges. The second letter included a copy of the December 2016 complaint regarding the illegal eviction action and requested an answer within 20 days. The letters were sent by certified mail, return receipt requested and first class mail. According to USPS tracking, both certified letters were delivered by mid-January 2017. Respondent did not respond to either letter.
In February 2017, the Committee wrote respondent stating that he had failed to respond to both complaints. The letter summarized the emails respondent and his paralegal sent to his client on the breach of contract action, advising the client that he would send a cashier's check only if [*2]the client discontinued his complaint against him. The Committee also advised respondent that his continued failure to cooperate would result in a suspension. Respondent did not respond.
In May 2017, a Committee investigator served respondent with a subpoena duces tecum by leaving it with his receptionist, who agreed to accept service on respondent's behalf, and by following up with certified and first class mailings. USPS tracking shows that the certified letter was delivered on May 15.
Respondent failed to appear for his deposition on May 23, 2017 pursuant to the subpoena. The Committee emailed respondent to inform him that if he did not contact the Committee to reschedule it would move for his interim suspension. Respondent failed to contact the Committee.
The Committee then obtained records directly from respondent's bank of his operating/business bank account. The records indicated that in July 2016, respondent's account had a negative balance of -$740.74. In August 2016, respondent deposited two checks into this account (which was not an attorney trust/escrow account) from the New York City Marshal totaling $21,768.88, which represented the judgment funds owed to his client in the breach of contract action. The same bank records indicate that respondent transferred $5,000 from this account to his own checking account. Respondent later spent a large majority of the funds in this operating/business account on personal and business expenses, including payroll, taxes, PayPal, and cash withdrawals.
The Committee personally served an interim suspension motion on respondent by leaving the motion with the receptionist at respondent's office and then mailing a copy via USPS priority mail and by certified mail.
By an affirmation dated November 1, 2017, respondent, pro se, requested an adjournment to December 1 explaining that the request was "based upon extraordinary circumstances, including intentional and persistent acts of known third-parties against the respondent personally, beginning in November 2016, and for the purpose of causing those facts underlying the instant disciplinary charges, as well as the attendant delay." Respondent has not filed a response to the motion.
Respondent's failure to answer the complaints, and his failure to comply with a court ordered subpoena directing his appearance for a deposition, constitutes willful noncompliance with a Committee investigation warranting immediate suspension. (Matter of Spencer, 148 AD3d 223 [1st Dept 2017]; Matter of Raum, 141 AD3d 198 [1st Dept 2016]; Matter of Yoo Rok Jung, 132 AD3d 236 [1st Dept 2015]).
The bank records obtained by the Committee sufficiently demonstrate that respondent engaged in professional misconduct by misappropriating, converting, or commingling client funds, such as warrants his immediate suspension from the practice of law. (Matter of Pierre, 153 AD3d 306 [1st Dept 2017]; Matter of Afilalo, 139 AD3d 175, 180 [1st Dept 2016]; Matter of Getreu, 113 AD3d 148 [1st Dept 2013]; Matter of Powell, 263 AD2d 121 [1st Dept 1999]).
By depositing checks he received on behalf of his client in the breach of contract action into his own business/operating account, respondent failed to preserve client funds in an escrow or special account as required under Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15(b) and he improperly commingled those funds with his own funds (Matter of Fletcher, 58 AD3d 254 [1st Dept 2008]; Matter of Rennie, 260 AD2d 132 [1st Dept 1999]).
Accordingly, the Committee's motion is granted, and respondent is suspended from the practice of law pursuant to 22 NYCRR 1240.9(a)(1), (3), and (5), effective immediately, and until further order of this Court.
All concur.
Order filed. [March 1, 2018]
Ordered that the motion is granted and respondent is suspended from the practice of law in the State of New York, effective the date hereof, and until further order of this Court. Opinion Per Curiam. All Concur.