Matter of Grant (2020 NY Slip Op 03485)





Matter of Grant


2020 NY Slip Op 03485


Decided on June 18, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 18, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, Presiding Justice, Rosalyn H. Richter, Sallie Manzanet-Daniels, Judith J. Gische, Barbara R. Kapnick, Justices.


M-450

[*1]In the Matter of Albert O. Grant, an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Albert O. Grant, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Albert O. Grant, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on February 9, 1976.



Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Denise Szekely, of counsel), for petitioner.
Respondent pro se.



PER CURIAM.


Respondent Albert O. Grant was admitted to the practice of law in the State of New York by the First Judicial Department on February 9, 1976. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.
The Attorney Grievance Committee (Committee) is seeking an order pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9(a)(3) and (5) immediately suspending respondent from the practice of law until further order of the Court upon the basis of his failure to comply with a lawful demand of the Committee and upon other uncontroverted evidence of professional misconduct.
Specifically, the Committee alleges that respondent has failed to fully cooperate with its investigation, and that uncontroverted evidence demonstrates that he intentionally converted and/or misappropriated client funds maintained in his IOLA account.
In March 2018, the Committee initiated an investigation based upon a complaint from a client who engaged respondent in the spring of 2017 to serve as the closing attorney in the sale of property. The client alleged that respondent wrongfully withheld more than $315,000 owed to him from the proceeds of the property sale, which closed on January 10, 2018, with respondent not paying his client his share of the proceeds until a mailing dated February 19, 2018. In said mailing were two checks totaling the full payout, one dated February 20, 2018 for $626,000 and the second dated February 23, 2018 for $316,669.08, along with instructions for the client not to deposit the second check until February 23, 2018.
While the first checked cleared, when the client attempted to deposit the second check on February 23, he was told by the bank that there was a stop payment order placed upon it. Although respondent denied having placed the stop payment order and promised his client that the check would clear later that day, it did not. Respondent subsequently promised to send a bank check instead but a replacement check was not delivered.
On May 29, 2018, the client individually and the LLC which had owned the property, commenced an action in the U.S. District Court for the Southern District of New York (SDNY) against respondent essentially alleging that he willfully misappropriated the net sale proceeds from the sale of the LLC's property, in several ways, constituting conversion.
By a Final Consent Default Judgment and Permanent Injunction filed with the court on December 13, 2018, respondent "deliberately and unequivocally" admitted to "all facts alleged in the Complaint [and] his liability as to each cause of action set forth in the Complaint" with damages totaling $426,749.95 (including interest and attorneys fees).
The Committee subpoenaed respondent's IOLA account bank records for the period of December 27, 2017 through December 26, 2018. On January 11, 2018, respondent deposited $3,541,331.75 into his IOLA account, which constituted the proceeds of the sale, and issued a check for $22,000 for his legal fee which he deposited into his business account. Notably, between January 12 and February 2, 2018, respondent made withdrawals from his IOLA account totaling $179,550, in the form of domestic and international wire transfers, checks, transfers to other checking accounts and other unspecified withdrawals, all unrelated to the LLC transaction, without permission or authority of the client. One wire transfer on January 31, 2018 was for $150,000 to a foreign bank, which respondent subsequently described in his answer to the complaint as "inadvertent."
The Committee avers that respondent used at least $82,648.62 of the sale proceeds without permission or authority of the client for his own personal and/or business purposes. While the Committee has calculated this amount based upon the bank records obtained thus far, both the client's complaint to the Committee and the complaint in the federal action alleged respondent converted and/or misappropriated more than $315,000.
In May 2018, respondent requested additional time to submit an answer to the disciplinary complaint due to his own health issues and his need to care for his wife who was undergoing cancer treatment. On May 30 respondent provided a brief answer, and on June 8 he [*2]submitted "Part Two" of his answer promising to send a detailed summary of his time sheets and other documentation the following week. Respondent included a copy of a June 8 letter to the SDNY in which he stated that he did not wish to contest the matter, he could not attend the hearing scheduled for that day due to health reasons and he would send a bank check for "any amount due" to the client's attorney.
On December 31, 2018 respondent advised the Committee that he planned on retaining an attorney, which he never did, and requested an extension until January 7,2019 to submit a supplemental reply to the complaint with documentation, citing the death of a close friend and his medical issues. On January 7, 2019, the Committee received a letter from the client informing it of the Consent Default Judgment in the SDNY matter. Thereafter, the Committee wrote to respondent reminding him of his failure to submit a full answer to the complaint, noting that his admissions in the Consent Default Judgment constituted uncontroverted evidence of misconduct, and giving him until February 4 to submit an answer or the Committee would move forward with an interim suspension. Respondent did not submit his "Final Answer" on January 15, 2019 as promised. Instead, on February 4, he provided an "Initial Response to the Complaints" wherein he stated, among other things, that he had "inadvertently" wired $150,000 in escrow funds to an unrelated third party, he "mistakenly thought that funds came in from another client," and he made no attempt to deny the allegations in either the disciplinary or SDNY complaints.
Notably, the Committee states that respondent never produced a complete answer to the complaint explaining his distribution of the net sale proceeds of the LLC, his failure to distribute the full share of the funds, or his many withdrawals of funds unrelated to the LLC, and he failed to provide his bank records as the Committee repeatedly requested.
The Committee maintains that respondent should be suspended from the practice of law for noncooperation with the Committee's lawful demand by failing to provide a fully responsive answer to the complaint and bank records, and upon other uncontested evidence of misconduct, in the form of bank records, his admissions in the District Court case, and admission to the Committee of an "inadvertent" $150,000 misappropriation, that immediately threatens the public interest pursuant to 22 NYCRR 1240.9(a)(3) and (5) (Matter of Goldsmith, 159 AD3d 188 [1st Dept 2018]; Matter of Pierre, 153 AD3d 306 [1st Dept 2017]; Matter of Reid, 137 AD3d 25 [1st Dept 2016]).
Respondent argues that, inter alia, under the circumstances he did cooperate with the Committee by providing information and responses to the extent that he could; and that he had a mild stroke in July 2014, was hospitalized in October 2015 for heart issues, and since February 2016, has been under psychiatric care for depression, anxiety and mood swings. Respondent offers that his medical records may be examined, and requests that a court appointed psychiatrist examine him "to see if he has the proper condition to practice of and not be an immediate threat to the public interest."
Respondent admits to "wrongfully convert[ing]" $150,000 by sending a wire transfer on a matter with another client and tried to get the money back but to no avail. Although he denies withholding $315,000 from his client, he admits that he did not contest the related federal action since he could not afford an attorney because his practice was almost depleted of clients and work since his 2016 medical problems. With respect to the issue of his mental capacity, respondent cites to cases where the issue was addressed in mitigation of a final sanction, which does not pertain to the current circumstances of an interim suspension.
The Committee contradicts respondent's claim of cooperation. Regarding respondent's request for a psychiatric examination of his capacity to practice law (22 NYCRR 1240.14[b]), the Committee notes that he failed to provide the Court with any medical records to support his claim, and that such claim is contradicted by the fact that he cogently put together his opposition to this motion. Finally, the Committee asserts that irrespective of the results of a psychiatric exam, such alleged incapacity is a separate issue from whether an interim suspension is warranted.
22 NYCRR 1240.9(a) provides as follows:
"A respondent may be suspended from practice on an interim basis during the pendency of an investigation or proceeding on application or motion of a Committee ... upon a finding by the Court that the respondent has engaged in conduct immediately threatening the public interest. Such a finding may be based upon: ... (3) the respondent's failure to comply with a lawful demand of the Court or a Committee in an investigation or proceeding under this Part; ... or (5) other uncontroverted evidence of professional misconduct."
Respondent's failure to cooperate with the Committee by not turning over bank records or providing a fully responsive answer to the complaint, despite being accorded many opportunities to do so, is well-documented. Such conduct "evinces a shocking disregard for the judicial system, and can only be interpreted as a deliberate and willful attempt to impede the Committee's investigation" (Matter of Gordon, 142 AD2d 135, 137 [1st Dept 1988]; see Matter of Lubell, 189 AD2d 186 [1st Dept 1993]; Matter of Valdes, 160 AD2d 31 [1st Dept 1990]). Moreover, the record reveals uncontroverted evidence demonstrating that he intentionally converted and/or misappropriated client funds maintained in his IOLA account.
Accordingly, the Committee's motion pursuant to 22 NYCRR 1240.9(a)(3) and (5) is granted, and respondent is suspended from the practice of law effective immediately, and until further order of this Court, and the request to seal portions of the record is granted.
All concur.
Order filed. [June 18, 2020]
The motion is granted and respondent is suspended from the practice of law in the State of New York pursuant to 22 NYCRR 1240.9(a)(3) and (5), effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court. The request to seal certain portions of the record is granted.