[663 NYS2d 568]

In the Matter of SIDNEY BAUMGARTEN, a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 30, 1997

## APPEARANCES OF COUNSEL

*Jorge Dopico* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Donald J. Sullivan* of counsel *(Bleakley, Platt & Schmidt,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Sidney Baumgarten was admitted to the practice

of law in the State of New York by the Second Judicial Department on March 29, 1961. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

On June 2, 1994, we granted the motion of the Departmental Disciplinary Committee for an order pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii) suspending respondent from the practice of law based upon substantial admissions under oath that he committed serious acts of professional misconduct, and upon other uncontroverted evidence of professional misconduct (*Matter of Baumgarten,* 197 AD2d 309). Respondent has now been suspended for over three years.

Respondent was served with a notice and statement of charges in which it was alleged that he violated Code of Professional Responsibility DR 1-102 (A) (4) and (7) (now [8]), DR 6-101 (A) (3) and DR 9-102 (A), (B) and (C) (4) (22 NYCRR 1200.3, 1200.30, 1200.46), by intentionally converting client funds, commingling client funds, failing to return promptly client funds as requested by the client, fraudulently attempting to hide personal funds from creditors and making misrepresentations to a client concerning the status of the client's escrow funds. Respondent filed an answer to the charges denying all of the charges except for part of Charge One, where respondent admitted that he did not maintain separate escrow and business accounts.

Respondent was retained by Dr. Lawrence E. August and Mrs. Harriet Ganz August on April 9, 1991 to represent Dr. August in negotiating debts owed to his creditors. About four months later, in August 1991, Mrs. August sent respondent a check for $22,393.66 to pay her husband's debts. Respondent deposited this check into an escrow account he maintained at Chemical Bank. On September 2, 1991, he closed the Chemical account and opened a new escrow account at Citibank. He deposited $41,325.25 into the account, which included the August check.

From September 1991 through May 1992, respondent failed to keep separate bank accounts for his personal and escrow funds and kept them in the one account at Citibank. Charge One, which charged that by depositing his personal funds in the same account in which he held escrow funds on behalf of clients, respondent commingled client funds, in violation of DR 9-102 (A) and (B), was sustained by the Hearing Panel. It also sustained Charge Two, which alleged that, by depositing his personal funds with client funds in an attempt to avoid tax

liens and liens from other creditors, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4).

By November 7, 1991, respondent had paid $9,113.91 to Dr. August's creditors. Accordingly, he should have been holding intact at least $13,279.75 in his Citibank escrow account on behalf of Dr. August. Nevertheless, the account balance was $1,934.56.

One of Dr. August's creditors was United Enterprises, a former landlord, who sued Dr. August in April 1989 for nonpayment of rent. Respondent represented Dr. August in this matter and the case was settled for $7,000. By June 1991, Dr. August had paid $5,000 toward the settlement. In February 1992, United Enterprises obtained a judgment against Dr. August for $11,460, representing the original amount of the suit less the $5,000 Dr. August had already paid.

On June 4, 1992, unaware of the default judgment against Dr. August, the Augusts wrote a letter to respondent demanding that he provide them with an accounting of the funds he used to pay Dr. August's debts and to return all remaining funds. In a June 15, 1992 letter to the Augusts, respondent included an accounting statement showing that he paid $11,660.22 to Dr. August's creditors, leaving a balance of $10,733.44. Nevertheless, the balance in respondent's Citibank escrow account was only $2,718.41. Thus, the Hearing Panel sustained Charge Three, which alleged that by falsely informing the Augusts on or about June 15, 1992 that $10,733.44 remained as the balance of the escrow funds, when in fact that balance in his escrow account was well below that amount, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4).

On July 29, 1992, United Enterprises served an information subpoena and restraining notice on the Augusts' joint bank account, freezing approximately $22,000. On August 12, 1992, respondent entered into a stipulation with United Enterprises to settle Dr. August's default judgment by paying $3,750 by August 25, 1992, instead of the $2,000 that initially would have been required to settle the matter in June 1991. However, on August 25, 1992, the balance in respondent's Citibank escrow account, relabeled as a "special account," was only $379.45. On August 26, 1992, respondent issued a check from his Citibank account satisfying the debt to United Enterprises. On August 27 and 28, 1992, respondent made two deposits, totalling $9,000, including a $4,000 cash deposit, into his Citibank account, in order to cover the $3,750 check.

The Hearing Panel sustained Charge Four, which alleged that by failing promptly to pay various creditors and failing to satisfy the stipulated settlement between Dr. August and United Enterprises, respondent neglected a legal matter entrusted to him, in violation of DR 6-101 (A) (3).

Although the Augusts had requested that respondent return the balance of their funds remaining in escrow in their June 4, 1992 letter, respondent did not send them the balance until May 1993. The Hearing Panel therefore sustained Charge Five, which had alleged that by failing to return promptly client funds as requested by the Augusts, respondent violated DR 9-102 (C) (4).

Charge Six, the most serious, alleged that by using client funds in escrow to pay for his own business and personal expenses, and thereby converting client funds, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4), and in conduct adversely reflecting on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]). With regard to this charge, respondent testified that he never intentionally converted client funds. Respondent asserted that the commingling and conversion of client funds was due to his failure to keep a close watch on his bank balance and his belief that he had sufficient cash flow to meet his escrow obligations. However, respondent, in a prior deposition, had admitted that he knew he was using escrow funds to pay his office expenses and the Hearing Panel sustained this charge.

The Hearing Panel considered respondent's mitigation evidence. It took into account respondent's one prior admonition on March 28, 1989 based upon violations of DR 6-101 (A) (2) and (3), DR 5-105 (B) (22 NYCRR 1200.24), DR 5-101 (A) (22 NYCRR 1200.20) and DR 5-104 (A) (22 NYCRR 1200.23). It also found that respondent's public service career was "commendable."

The above findings of fact and conclusions of law by the Hearing Panel are confirmed by us. Respondent admitted, in effect, that he converted funds with "venal intent" when he admitted that he commingled his personal funds with escrow funds and used escrow funds for his own benefit. Respondent's commingling and conversion of client funds was not the result of simple inadvertence or sloppy bookkeeping, and we have consistently held that an attorney's intentional conversion of client's funds requires his/her disbarment *(see, Matter of Marks*, 72 AD2d 399, 401; *Matter of McLaughlin*, 158 AD2d 12,

14). Restitution of converted funds is insufficient to avoid disbarment (*Matter of McLaughlin, supra*).

Respondent's deposition testimony demonstrated that he intentionally used client funds to pay business expenses. The fact that he intended to replenish the funds he utilized and did in fact pay back his clients is not relevant to the issue whether he acted with venal intent. Attorneys, such as respondent, who have intentionally converted client funds must be disbarred (*Matter of Glazer*, 218 AD2d 411, 413; *Matter of Ampel*, 208 AD2d 57), and, in this case, there are no extremely unusual mitigating circumstances that would justify the imposition of a lesser sanction.

In addition to respondent's intentional conversion, he neglected a client matter, made misrepresentations to the client and has received a prior admonition.

Accordingly, the petition to confirm the Hearing Panel's findings, conclusions and recommendation that respondent be disbarred is granted. The cross motion to disaffirm is denied. Additionally, the cross motion to reopen the hearings is denied and respondent's name is ordered stricken from the roll of attorneys.

ELLERIN, J. P., WALLACH, NARDELLI, MAZZARELLI and ANDRIAS, JJ., concur.

Petition granted insofar as to confirm the Hearing Panel's findings, conclusions and recommendation, and respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, and respondent's name is stricken from the roll of attorneys and counselors-at-law in the State of New York, all effective October 30, 1997. The cross motion is denied in its entirety.