[49 NYS3d 99]

In the Matter of ALEXANDER PERCHEKLY, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 23, 2017

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Attorney, Attorney Grievance Committee,* New York City (*Sherine F. Cummings* of counsel), for petitioner.

*Alexander Perchekly*, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

Respondent Alexander Perchekly was admitted to the practice of law in the State of New York by the Second Judicial Department on January 27, 1999. At all times relevant herein, respondent maintained an office for the practice of law within the First Judicial Department.

The Attorney Grievance Committee now moves for an order, pursuant to Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9 (a) (2) and (5), immediately suspending respondent from the practice of law until further order of this Court based upon his admission under oath that he committed acts of professional misconduct, including conversion and misappropriation of client funds, and upon other uncontroverted evidence of misconduct regarding bank records. The Committee served respondent, pro se, with its motion by certified mail return receipt requested on consent. A signed return receipt with respondent's initials was returned to the Committee, but respondent has not submitted a response.

For the reasons set forth below, we now grant the Committee's motion and suspend respondent from the practice of law, effective immediately, until such time as the disciplinary matters before the Committee have been concluded, and until further order of this Court.

In August 2015, the Committee received a complaint from respondent's client in which she alleged that, inter alia, in 2009, she retained respondent to represent her in a personal injury action. Respondent settled that action in March 2014 for $24,000. While respondent promptly took his legal fee of $8,000, he did not remit the client's net share of the settlement ($16,000) until one year later, in March 2015, after the client hired another attorney to investigate. The client further alleged that the defendant may have erroneously overpaid respondent an additional $16,000.

In January 2016, respondent answered the initial complaint asserting several defenses including that he had settled the personal injury case with his former client's authorization; the

defendant remitted the settlement funds in separate payments, the last of which he did not receive until the summer of 2014; he had not promptly remitted his client's share of the settlement because he had been preoccupied with his transition from private practice to an in-house counsel position; he remitted his former client's settlement funds once her new attorney contacted him; and he returned the overpayment made on behalf of the defendant.[1]

On May 6, 2016, the Committee requested that respondent produce his client's file and specified escrow account records—which he is required to maintain pursuant to Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (d) (1). Thereafter, by letter dated May 20, 2016, respondent explained that a fire had destroyed his law office along with the requested documents; he promised to provide the Committee with a copy of the fire marshal's report, but then failed to do so.

The Committee obtained respondent's various records from his bank, including his trust account records. Those records showed that between April and September 2014, respondent deposited a total of $40,000 in settlement funds that he had received on behalf of the client into the trust account. Respondent made deposits on April 18 and June 6, 2014 each in the amount of $8,000 and two deposits on June 30, 2014 into his trust account for a total of $32,000. On September 24, 2014, respondent deposited another $8,000 bringing the trust account balance up to $40,000. Thus, the additional $16,000 represented the overpayment on behalf of the defendant. As of June 30, 2014, respondent had received the entire $24,000 settlement to which his former client was entitled, but he did not immediately disburse these funds to his former client. As of September 24, 2014, he had also received the $16,000 overpayment, but he did not immediately return this overpayment made on the defendant's behalf either.

From June 30, 2014 until March 16, 2015, when the client finally received her net share of the settlement, respondent should have maintained a minimum balance of $16,000 in his

---

1. The client refused the first settlement check tendered by respondent because it contained the language "Full & Final Settlement" and respondent issued a second check without this language. In reply to respondent's answer, the Committee asserted that, inter alia, respondent failed to adequately explain whether the additional $16,000 he received from the defendant was actually an overpayment, why it went unnoticed for so long, and whether it remained intact in his escrow account.

trust account. However, starting on or about August 5, 2014, respondent's trust account balance began to repeatedly fall below $16,000. By December 8, 2014, the balance had fallen to only $252.34. The records also demonstrated that the $16,000 overpayment was deposited into respondent's trust account in September 2014, after which the balance in the trust account repeatedly fell. In September 2015 respondent finally issued a check for $16,000, returning the overpayment, drawn against his operating account.

The bank records show that respondent invaded his client's funds during this time period by repeatedly transferring funds from this trust account to his other business and escrow accounts, and issuing checks unrelated to the client's matter. Likewise, respondent improperly used funds rendered on behalf of the defendant by these same actions. Respondent then replenished his trust account by, among other means, depositing other clients' settlement monies into the account and making transfers from his business accounts and potentially his own personal account.[2] Commingling of business and client funds is prohibited under rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0). In addition, on February 4, 2015, respondent transferred $16,008 from another escrow account to his trust account, immediately prior to which it held only $918.34. The date of this transfer coincided with the date of the first settlement check he issued to his client (which she rejected because of the "Full and Final Settlement" language). Earlier, on March 24, 2014, respondent made a $7,000 cash withdrawal from his trust account. Cash withdrawals are prohibited by rule 1.15 (e), which requires that all special account withdrawals be made to named payees.

On October 13, 2016, respondent, pro se, appeared before the Committee for an examination under oath at which time he admitted he had misappropriated his former client's funds and did not challenge the bank records. At first, respondent testified that there had been insufficient funds in his escrow account because he had made accounting errors in transferring funds between his accounts. Respondent also testified that he was in the process of closing his practice and was having some financial problems. The following colloquy ensued:

"STAFF COUNSEL: So when you were withdrawing the money, you knew you were taking money

---

2. The Committee obtained respondent's business account records directly from the bank. One account respondent transferred funds from appeared to be his personal account.

that belonged to [the client].

"RESPONDENT: Not intentionally. I needed those funds. I knew I'm putting those funds back. I'm being absolutely honest. Obviously, I'm trying to answer everything truthfully. I really stopped holding an accounting at that point in time. I kept my ledgers and all that stuff, but I wasn't really following up on them and transfers were being made. It was not intentionally taking [the client's] funds. The intent was always to put those funds back."

Respondent testified that he returned the $16,000 overpayment made on behalf of the defendant and deposited into his trust account, but he could not recall when he did so, or from which of his accounts he disbursed the funds. The Committee's supplemental affirmation includes evidence that respondent eventually returned the overpayment on September 11, 2015, and the check he issued was from his operating account.

We find that respondent engaged in professional misconduct that immediately threatens the public interest, as evinced by his admissions under oath and bank records, warranting his interim suspension pursuant to 22 NYCRR 1240.9 (a) (2) and (5).

22 NYCRR 1240.9 (a) provides for an interim suspension "upon a finding by the Court that the respondent has engaged in conduct immediately threatening the public interest. Such a finding may be based upon: . . . (2) the respondent's admission under oath to the commission of professional misconduct . . . or (5) other uncontroverted evidence of professional misconduct."

The record sufficiently establishes that respondent repeatedly converted and misappropriated client funds, commingled business and client funds, improperly withdrew trust funds, made an improper $7,000 cash withdrawal, and that such misconduct immediately threatens the public interest (see e.g. Matter of Afilalo, 139 AD3d 175 [1st Dept 2016]; Matter of Roth, 131 AD3d 314 [1st Dept 2015]; Matter of Anderson, 123 AD3d 86 [1st Dept 2014]; Matter of Getreu, 113 AD3d 148 [1st Dept 2013]).

Accordingly, the Committee's motion should be granted and respondent suspended from the practice of law, effective immediately, until such time as disciplinary matters before the

Committee have been concluded, and until further order of this Court.

FRIEDMAN, J.P., RENWICK, SAXE, GISCHE and KAHN, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters before the Committee have been concluded, and until further order of this Court.