Matter of Baumgarten (2019 NY Slip Op 06879)





Matter of Baumgarten


2019 NY Slip Op 06879


Decided on September 26, 2019


Appellate Division, First Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 26, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. Judith J. Gische, Justice Presiding,
Angela M. Mazzarelli
Marcy L. Kahn
Jeffrey K. Oing
Anil C. Singh,Justices.


M-3041

[*1]In the Matter of Sidney Baumgarten, an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Sidney Baumgarten, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Sidney Baumgarten, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on March 30, 1961.



Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Sherine F. Cummings, of counsel), for petitioner.
Roger Bennet Adler, P.C., for respondent.



PER CURIAM.


Respondent was admitted to the practice of law in the State of New York by the Second Judicial Department on March 30, 1961. At all times relevant to this proceeding, respondent has maintained an office for the practice of law within the First Judicial Department.
In a previous proceeding, this Court, on June 2, 1994 immediately suspended respondent based upon, inter alia, substantial admissions under oath that he used client escrow funds to pay his own expenses and commingled client funds with his own funds (197 AD2d 309 [1st Dept 1994]). After charges were filed and a hearing held, this Court, by order of October 30, 1997, disbarred respondent for, inter alia, intentional conversion of client funds (236 AD2d 30 [1st Dept 1997]). On November 17, 2005, he was reinstated.
Now, the Attorney Grievance Committee (AGC) seeks an order pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9(a) immediately suspending respondent from the practice of law until further order of this Court, based on new, and uncontroverted, evidence of professional misconduct which immediately threatens the public interest. The AGC filed this motion after opening an investigation into a 2017 dishonored check drawn against respondent's escrow account. While the dishonored check does not itself form the basis for the AGC's motion, the investigation revealed evidence of escrow-related misconduct in another matter.
Specifically, on June 18, 2014, respondent, who represented an estate in the sale of a cooperative apartment, received a down payment of $8,000 from the buyer, which he deposited into his escrow account. Respondent testified at his March 20, 2019 deposition that he could not be sure that he was not holding additional funds for the buyer and he would "have to double check" because he could not give the AGC "a correct answer at [that] time."
Because of issues concerning title, the transaction never closed and respondent refunded the buyer's $8,000 deposit on July 7, 2017 (three years after he first deposited the funds). However, the AGC learned, during that three-year period the balance in respondent's escrow account repeatedly fell below $8,000. The balance first fell below $8,000 on November 20, 2014, five months after the down payment was deposited into his account, when he issued a check (#356) to a certain individual for $5,000, which brought the balance down to $6,306.63. Respondent testified at his deposition that a notation on the check referred to a company in which he and his wife were investors, but he could not explain the purpose of the payment, nor why it was issued from his escrow account.
Respondent further addressed this check in an April 22, 2019 letter to the Committee. After explaining the steps he had taken to ascertain the reason for the payment, he stated:
"Check # 356 was not intended for me, or for any personal, or corporate obligation. I am just baffled and, of course, should have exercised due diligence at the time. I am hopeful that an investigation will reveal the underlying reason for the check of $5,000 and who should have been credited for it."
After the issuance of this check, respondent continued to invade the escrow account, making two improper cash withdrawals for $200 and $500, in December and January 2015, the reasons for which respondent could not recall, and issuing a $500 certified check to an attorney in connection with another client. As of February 4, 2015, respondent's escrow account balance had fallen to $5,106.63.
While several intervening deposits briefly brought the account balance above $8,000, respondent's invasions of the account resumed in June 2015, as evidenced by four disbursements: a $10,000 payment to a client whom respondent had represented in a real estate matter and in a negligence case; a $920 payment to "The Service" for investigative work done to locate a missing co-tenant of the cooperative apartment for which he held the down payment; a $136 electronic payment to Verizon Wireless, which respondent claimed "was probably an expense on one of [his] cases," while acknowledging that he made arrangements to have his cell phone bill paid automatically and could "check back on that," something there is no evidence that he ever did; and a $169 check made payable to A.S.A. College, which respondent claimed [*2]was made as payment to, and at the direction of, a woman who had done secretarial work in connection with the estate from which the buyer intended to purchase the apartment at issue. As of June 11, 2015, the escrow account balance had fallen to $3,881.61.
After an additional client deposit and withdrawal, respondent made an ATM cash withdrawal of $500 on August 4, 2015, decreasing the account balance to $3,381.61. Further, on April 11, 2017, respondent transferred $12,500 from his operating account into his escrow account, thereby commingling personal funds with client/third-party funds which is prohibited under rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR § 1200.0). As noted, the sale of the estate's apartment never closed and respondent refunded the buyer's $8,000 down payment on July 7, 2017, by which time the escrow account had been replenished. Finally, on August 15, 2017, respondent again commingled personal funds with client/third-party funds by transferring $600 from his operating account into the escrow account.
The AGC maintains that respondent's repeated invasions of the $8,000 down payment constitutes conversion and/or misappropriation of third-party funds (including his disbursement of funds for the investigative and secretarial work on behalf of the seller-estate because the buyer never authorized the use of her funds to pay for these services), in addition to which he improperly made three cash withdrawals from his escrow account and engaged in commingling on at least two occasions. The AGC argues that respondent's conversion and/or misappropriation of third-party funds evidences professional misconduct that immediately threatens the public interest for which his interim suspension is warranted.
In a letter dated July 26, 2019, respondent's counsel states that "we do not object to granting the motion to the extent of ordering a hearing." Accompanying this letter is an affirmation in opposition from respondent, who is 86-years-old. Respondent admits that he "failed to properly monitor [his] escrow account," but argues that any suspension would be unnecessary and disproportionate because no client suffered a loss or even lodged a complaint. As to the $5,000 check issued against the escrow account and which invaded the down payment, respondent has no present recollection of who this payee is or why the check was issued. As to the fact that it drew against the buyer's funds, he claims that he was entitled to substantial legal fees for work done on behalf of the seller-estate, and at the time the sale was canceled, he had sufficient funds on deposit in his escrow account to return the $8,000 down payment.
Respondent asks that this Court take into account his prior public service, his military service, and his community service; that the conduct at issue occurred in the midst of an acrimonious separation from his former law partner, who has brought litigation against respondent, the stress of which has affected his health (he cites to a medical diagnosis two years ago just before issuance of the dishonored check which triggered the AGC's investigation); and that he has submitted letters from former clients attesting to the quality of his representation.
Respondent maintains that, as he has no pension, savings, or investments upon which he can rely, an interim suspension would leave him and his wife (who is unable to work due to health issues) without means of financial support. Furthermore, he is presently working on time sensitive legal matters with deadlines and statutes of limitations that are running. In light of the foregoing, respondent requests that no interim suspension be imposed and that he be granted a hearing, and advises that he "intend[s] to terminate [his] practice at the end of this year, and retire, hopefully with dignity, so that [he] can teach, write, or perform other services which enable [him] to support [his] family."
Pursuant to 22 NYCRR 1240.9(a), this Court may suspend an attorney from the practice of law, "on an interim basis during the pendency of an investigation or proceeding on application or motion of a Committee ... and upon a finding by the Court that the respondent has engaged in conduct immediately threatening the public interest." The AGC relies on 1240.9(a)'s provisions that interim suspension may be based upon "(2) the respondent's admission under oath to the commission of professional misconduct... or (5) other uncontroverted evidence of professional misconduct."
We find that the AGC has met its burden and respondent should be immediately suspended until further order of this Court. The bank records, combined with respondent's deposition testimony, provide evidence that he converted and/or misappropriated approximately $5,000 of the buyer's $8,000 in down payment funds, and improperly commingled funds and made cash withdrawals from his escrow account (see Matter of Carlebach, 156 AD3d 44 [1st Dept 2017]; Matter of Perchekly, 149 AD3d 17 [1st Dept 2017].
The fact that respondent ultimately returned the $8,000 down payment is not sufficient to avoid an interim suspension, nor are his personal circumstances, which are more appropriate for consideration as mitigation evidence at a hearing based on formal charges (see Matter of Hornstein, 121 AD3d 1, 3 [1st Dept 2014]; Matter of Blau, 50 AD3d 240, 241-242 [1st Dept 2008]. Additionally, we find respondent's claims that an interim suspension would impose too great a financial hardship upon him and his wife and would unfairly prejudice his clients are unavailing. In Matter of Leavitt (291 AD2d 37, 39 [1st Dept 2002]), where we imposed an 18-month suspension as final discipline, this Court opined that "the fact that an extended suspension would work a hardship on respondent's family, clients and practice is inherent in any suspension imposed by this Court" (see also Matter of Miller, 170 AD3d 1, 6-7 [1st Dept 2019]).
Accordingly, the AGC's motion should be granted, and respondent suspended from the practice of law, effective immediately, and until further order of this Court.
All concur.
Order Filed. [September 26, 2019]
The motion is granted and respondent is suspended from the practice of law in the State of New York pursuant to 22 NYCRR 1240.9(a)(3), effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court. Respondent may file a written request for a post-suspension hearing within 20 days of the date of this Court's order.