[60 NYS3d 119]

In the Matter of JAY B. ZUCKER, an Attorney, Respondent. ATTORNEY GRIEVANCE COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

In the Matter of STEVEN J. KWESTEL (Admitted as STEVEN JEFFREY KWESTEL), an Attorney, Respondent. ATTORNEY GRIEVANCE COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, August 15, 2017

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Attorney, Attorney Grievance Committee,* New York City (*Orlando Reyes* of counsel), for petitioner.
*Michael S. Ross,* for respondents.

### OPINION OF THE COURT

Per Curiam.

Respondent Jay B. Zucker was admitted to the practice of law in the State of New York by the First Judicial Department on January 22, 1990. Respondent Steven J. Kwestel was admitted to the practice of law in the State of New York by the Second Judicial Department on June 19, 1996, under the name Steven Jeffrey Kwestel. At all times relevant to this proceeding, both respondents maintained an office for the practice of law within the First Department as partners in a law firm.

In 2016, the Attorney Grievance Committee (Committee) served the respondents with separate petitions containing essentially similar charges of professional misconduct. In their respective answers, respondents admitted the material facts and all the charges. The charges against respondents stem from their admitted failure to properly supervise a former non-attorney employee who served as their law firm's bookkeeper, as a result of which the employee misappropriated approximately $2 million from the firm's bank accounts which included client and/or third-party funds.

By joint motions dated March 30, 2017, pursuant to Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.8 (a) (5),

both the Committee and respondents ask this Court to impose discipline based upon the stipulated facts and upon the consent of the parties and that respondents be suspended from the practice of law in New York for six months and until further order of this Court.

22 NYCRR 1240.8 (a) (5) provides that, at any time after the Committee files a petition alleging professional misconduct against an attorney, the parties may file a joint motion requesting the imposition of discipline by consent, which must include a stipulation of facts, the respondent's conditional admission of acts of professional misconduct and specific rules or standards of conduct violated, any relevant aggravating and mitigating factors, and an agreed-upon disciplinary sanction (*see* 22 NYCRR 1240.8 [a] [5] [i], [ii]). If the motion is granted, the Court must issue a decision imposing discipline upon the respondent based on the stipulated facts and as agreed upon in the joint motion. If the motion is denied, however, the conditional admissions are deemed withdrawn and may not be used in the pending proceeding (*see* 22 NYCRR 1240.8 [a] [5] [iii]).

In this case, both respondents conditionally admit that, at all times relevant herein, they practiced law as partners in a two-partner law firm, Zucker & Kwestel, LLC, which maintained two attorney special accounts, as well as other bank accounts incident to the practice of law. In or about June 2003, respondents hired MT, a non-attorney, as the firm's full-time bookkeeper/controller, prior to which respondent Kwestel had primary responsibility for such duties.

After an initial period of training, during which respondents consistently reviewed MT's work, respondents gradually began delegating certain responsibilities to MT which included expediting and/or coordinating the deposit of client and/or third-party funds into the firm's bank accounts and maintaining bank and bookkeeping records for the transactions in the firm's bank accounts. Respondents authorized MT to be a signatory on the firm's escrow accounts out of ignorance of the pertinent disciplinary rules and to execute online transfers of funds from the firm's escrow accounts provided that respondents approved it. MT frequently worked out of the firm's New Jersey office where respondents infrequently conducted business.

Respondents did not, as required, regularly review, audit, and reconcile the firm's escrow accounts, nor did they properly

supervise MT's work as bookkeeper/controller which included the work he performed in connection with the firm's escrow accounts. As a result, between 2009 and 2013, MT misappropriated more than $2 million from the firm's bank accounts, including escrow accounts. His defalcations involved approximately 200 client matters, were done without the permission or authority of the rightful owners of the funds at issue, and his actions were carried out without respondents' knowledge or consent.

By letter dated June 21, 2013, the New Jersey Office of Attorney Ethics (OAE) notified respondents that a check drawn on one of their escrow accounts for $274.47 was dishonored due to insufficient funds. MT intercepted the OAE's letter, did not inform respondents of the dishonored check, and replied to the OAE's letter without respondents' knowledge. In June 2013, the OAE forwarded the overdraft notice and MT's response to the New York Lawyers' Fund for Client Protection which, in turn, forwarded them to the Committee and respondents.

Respondents addressed the matter with MT who informed them that the check had purportedly been dishonored because the funds in the escrow account it was drawn against had been transferred to an escrow account at another bank, but MT purportedly overlooked the fact that the check at issue had not yet been presented for payment when the transfer was made. Prior to receiving any correspondence from the Committee, respondent Zucker, on behalf of the firm, sent a letter to the Committee explaining the purported reason for the dishonored check and that a replacement check had been issued. The Committee notified respondents that they were the subject of a sua sponte investigation and requested that they submit bank and bookkeeping records for the escrow accounts.

In August 2013, MT's criminal attorney contacted respondents and advised them that MT had misappropriated approximately $3 million from the firm's bank accounts, including its escrow accounts, but that MT had arranged for full restitution to be made provided that certain conditions were satisfied. Upon learning of the defalcations, respondents retained their current ethics counsel to assist them in addressing MT's thefts. They also began the process of attempting to reconstruct the ledgers for the firm's escrow accounts based upon the ledgers maintained by MT on the firm's computers via the computer program QuickBooks, account statements and records ordered from the banks, and their client files. MT's

employment with the firm reportedly ended in or about August 2013.

In September 2013, respondents' ethics counsel advised the Committee of the theft of funds and that he was communicating with MT's criminal attorney regarding, among other things, restitution of the stolen funds. Respondents subsequently retained civil counsel to negotiate repayment of the misappropriated funds. A forensic accountant ultimately determined the total amount of stolen funds to be $2,761,267 (of which $2,187,445.02 belonged to clients and/or third parties and $573,821.98 belonged to respondents).

In April 2014, MT made full restitution to respondents' firm which was funded by benefactors on his behalf. As a condition of restitution, respondents were required to enter into a non-reporting agreement regarding MT's defalcations; however, the agreement did not prohibit them from answering questions from law enforcement should they be contacted.

As required, each respondent has submitted an affidavit in which he conditionally admits the foregoing facts, and that those facts establish that he has engaged in conduct prejudicial to the administration of justice, which conduct also adversely reflects on his fitness as a lawyer, in violation of rule 8.4 (d) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0), respectively. Specifically, respondents admit that they failed to regularly supervise MT, review or audit the firm's bank account records, and thereby failed to take reasonable steps to safeguard client and/or third-party funds in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (a); failed to exercise reasonable management or supervisory authority adequate to try to prevent MT's theft of client and/or third-party funds, which if committed by a lawyer would have constituted misappropriation and/or intentional conversion (rules 1.15 [a]; 8.4 [c]), and, thus, they violated rule 5.3 (b) (2); allowed MT to execute online transfers of funds from the firm's escrow accounts, which violated rule 1.15 (e) in that such transfers were not disbursements to named payees, and, thus, they violated rule 5.3 (b) (1); designated a non-attorney as a signatory on an attorney special account in violation of rule 1.15 (e); and based on their overall conduct violated rule 8.4 (h).

In addition, respondent Kwestel admitted that, between 2005 and 2009, he deposited approximately between $15,000 and $50,000 in personal funds into one of the firm's two escrow ac-

counts out of ignorance as to the pertinent disciplinary rules and not for any improper purpose (e.g., to avoid tax obligations or creditors) in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (b). Further, each respondent consents to the agreed discipline of a six-month suspension, which consent is given freely and voluntarily without coercion or duress. Lastly, each respondent states that he is fully aware of the consequences of consenting to such discipline, as he has discussed such consequences with his attorney.

The parties stipulated as to the following mitigation: since the events at issue respondents instituted proper account management and oversight practices; there was every reason to believe that MT would be an honest and capable employee based on professional recommendations, including one from respondent Zucker's sister, a retired attorney; there were no early warning signs of MT's defalcations; respondents came to implicitly trust MT over the years based on, inter alia, his diligence and personal friendship with respondent Zucker; designating MT as a signatory on the firm's escrow accounts was done out of ignorance as to the pertinent disciplinary rules, and respondents mistakenly believed that his disbursement of escrow funds in certain circumstances was administrative in nature; there was some degree of supervision over MT's work and oversight of the firm's escrow accounts, albeit both were admittedly inadequate; in 2009, respondent Zucker's wife became ill which required him to reduce his daily involvement with the firm in order to focus on caring for his wife and their four children, as a result of which respondent Kwestel took on increased responsibilities and supervisory duties; upon learning of MT's thefts respondents took immediate action which included spending hundreds of hours reconstructing and reconciling escrow account records and obtaining reimbursement as a result of which no clients or third parties were harmed; respondents were also victims of MT's thefts; following discovery of MT's thefts respondents began to wind down the firm's practice which remains in operation only for purposes of completing a small number of pending transactions; and respondents fully cooperated with the Committee, took full responsibility and expressed remorse for their misconduct, had no prior disciplinary history, have an excellent reputation for honesty and integrity, and have been active in their communities by, among other things, doing pro bono legal work.

The parties have also stipulated that respondents' failure to report MT's thefts to law enforcement is an aggravating factor

but note that restitution was conditioned upon respondents entering into a non-reporting agreement, which did not prohibit them from answering questions from law enforcement if contacted about the thefts. Further, this aggravation is tempered by the mitigating factor that no client or third party suffered monetary loss.

Since liability has been established via respondents' individual and conditional admissions, the only issue before this Court is the sanction to be imposed. In determining an appropriate measure of discipline to impose, we note that whether, and to what extent, attorneys are subject to discipline for defalcations occasioned by someone under their supervision depends on a number of factors, as follows:

> "(1) the subject attorney's partnership status and/or level of experience; (2) the presence (or absence) of 'early warning signs' of financial improprieties, whether such signs were ignored and, if so, for how long; (3) whether the proper authorities were notified of defalcations upon their discovery; (4) the presence (or absence) of monetary loss to clients and the magnitude thereof; and (5) whether the attorney attempted to reimburse client losses caused by another" (*Matter of Galasso*, 105 AD3d 103, 105 [2d Dept 2013]).

Applying these factors, we find that a six-month suspension stipulated by the parties is an appropriate sanction in view of respondents' admitted misconduct as well as the mitigating factors presented herein. Respondents' misconduct was non-venal and the result of ignorance regarding the pertinent disciplinary rules. While the parties acknowledge respondents' failure to report MT to law enforcement as an aggravating factor, the restitution agreement by which they agreed not to do so, which was negotiated by their civil counsel, did not prohibit them from answering questions from law enforcement regarding the thefts if contacted. Moreover, full restitution was obtained through the agreement and no client suffered monetary loss. Finally, respondents have no prior disciplinary history, have freely admitted their misconduct, and expressed remorse.

Significantly, a six-month suspension stipulated to by the parties is also supported by prior precedent (*see e.g. Matter of Langione*, 131 AD3d 199 [2d Dept 2015]; *Matter of Laudonio*, 75 AD3d 144 [2d Dept 2010]). For instance, in *Matter of Lan-*

*gione,* the Court suspended a former law partner of the respondent (*Matter of Galasso,* 105 AD3d at 103) for six months for failing to properly supervise his firm's bookkeeper and admittedly failing to review the actual bank records for the firm's special accounts which allowed the bookkeeper to steal more than $5 million in client funds. The Court found that had the respondent fulfilled his fiduciary obligations he would have been alerted to irregularities in the firm's bank accounts at a time when the ongoing thefts by the bookkeeper could have been prevented or ameliorated (*Langione* at 212). The Court found the attorney's misconduct was mitigated by his attempts to make restitution to his aggrieved clients from his personal funds, independent of, and in addition to, settlement funds obtained and disbursed as the result of litigation.

Accordingly, the parties' joint motions for discipline by consent should be granted, and respondents Jay B. Zucker and Steven J. Kwestel should be suspended from the practice of law in the State of New York for a period of six months and until further order of this Court.

SWEENY, J.P., RENWICK, ANDRIAS, GESMER and KAHN, JJ., concur.

Respondents suspended from the practice of law in the State of New York for a period of six months, effective the date hereof, and until further order of this Court.