Matter of Mertz (2019 NY Slip Op 03155)





Matter of Mertz


2019 NY Slip Op 03155


Decided on April 25, 2019


Appellate Division, First Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 25, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. Dianne T. Renwick, Justice Presiding,
Sallie Manzanet-Daniels
Angela M. Mazzarelli
Ellen Gesmer
Jeffrey K. Oing, Justices.


M-254

[*1]In the Matter of Peter Alan Mertz, an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Peter Alan Mertz (OCA Att. Reg. 1476787), Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Peter Alan Mertz, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on
 March 5, 1979.



Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Jeremy S. Garber, Esq. of counsel), for petitioner.
John L. Russo, Esq., for respondent.



PER CURIAM.


Respondent Peter Mertz was admitted to the practice of law in the State of New York by the First Judicial Department on March 5, 1979, under the name Peter Alan Mertz, and at all times relevant herein maintained an office for the practice of law within the First Department.
The Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.8(a)(5)(i) provides that, at any time after the Committee files a petition alleging professional misconduct against an attorney, the parties may file a joint motion requesting the imposition of discipline by consent, which must include a stipulation of facts, the respondent's conditional admission of acts of professional misconduct and specific rules or standards of conduct violated, any relevant aggravating and mitigating factors, and an agreed-upon disciplinary sanction (see 22 NYCRR 1240.8[a][5][i], [ii]). If the motion is granted, the Court must issue a decision imposing discipline upon the respondent based on the stipulated facts and as agreed upon in the joint motion.
By joint motion dated January 15, 2019, the Attorney Grievance Committee (AGC) and respondent ask this Court, pursuant to the framework outlined above, to suspend him from the practice of law for two years. The motion is supported by a joint affirmation which contains a statement of facts, conditional admissions, factors in aggravation and mitigation, and agreed upon discipline. The motion is further accompanied by respondent's affidavit acknowledging his admission to the stipulated facts, his consent to the agreed upon discipline, which he has freely and voluntarily given, and his full awareness of the consequences of such consent.
The parties have filed an admission of facts which recounts a variety of conduct that resulted in nine categories of charges against respondent. The stipulated facts, grouped according to the charges they relate to, are as follows:
Charges 1-4 (alleging violations of rule 5.4(b) of the Rules of Professional Conduct (22 NYCRR 1200.0) (prohibiting formation of a partnership with a non lawyer if any of the activities of the partnership consist of the practice of law), rule 8.4(d) (conduct prejudicial to the administration of justice), and 8.4(h) (conduct adversely reflecting on fitness as a lawyer): These charges related to respondent's filing of a certificate of incorporation for a law firm naming a deceased person as one of the principals; his failure to file certificates of incorporation with the First Department for seven law firms he formed between 2003 and 2016, as required by Business Corporation Law §§ 1501(a) and 1503(c); and his formation of a legal professional corporation with a non attorney principal.
Charges 5-6 (alleging violations of former Code of Professional Responsibility DR 1-102(a)(5) (22 NYCRR 1200.3 [a][5])/current rule 8.4(d) and former DR 1-102(a)(6) (22 NYCRR 1200.3 [a][6]/current rule 8.4(h)) [FN1] 6: These charges relate to the fact that, between November 1985 and June 1987, respondent was arrested five separate times, pleading guilty to driving while ability impaired by drugs (Vehicle and Traffic Law § 1192.4), an unclassified misdemeanor, and to criminal possession of a hypodermic instrument and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.45, 220.03,
respectively), both class A misdemeanors. Respondent failed to
report these convictions to the AGC as required by
Judiciary Law § 90(4)(c). In a July 2015 letter responding to
the AGC's inquiry, respondent explained that his criminal record
was the result of a six-year addiction (1983-1989) to crack
cocaine.
Charges 7-16 (alleging violation of rules 1.5(a) (collection
of excessive or illegal fee or expense), 1.15(a) (prohibiting
misappropriation and commingling), 1.15(b) (failing to keep
funds in special attorney account), 1.15(c)(1) and (4) (failing
to give notification of receipt of funds and promptly pay over
funds client entitled to receive), 8.4(d), and 8.4(h)). These
charges were leveled in connection with the representation by
one of respondent's law firms of a client in relation
to an employment dispute. A firm employee placed a settlement
check in a non escrow, operating account, from which the firm
wrote approximately 28 checks against the settlement funds. Before actually paying the client her share of the proceeds, the lawyer handling the matter insisted that the client first sign a photocopy of the check; then, after the client's refusal to do so, threatened to donate the funds to charity if the client did not retrieve the check within one week. When the client complained about this behavior to the AGC, the firm commenced suit against the client for harassment and defamation in New York City Civil Court, and then commenced a separate action in Supreme Court, asserting similar claims, after the client refused the firm's demand to withdraw the disciplinary complaint. The firm
ultimately paid the client her settlement monies as part of an
agreement. However, the firm's responses to AGC questions
concerning why the settlement funds had been deposited into a
non escrow account, and requesting the availability of
documentation concerning the representation, turned out to be
inaccurate.
Charges 17-24: (violation of rules 1.6(a) and (c) (failing
to prevent disclosure of confidential client information),
3.1(a) and (b)(3) (frivolous litigation), 8.4(d), and
8.4(h)): This set of charges related to the representation by one of the other firms controlled by respondent of a different, who had retained the firm in connection with a criminal
matter. That client discharged the firm in the middle of the
representation, but the firm refused his demand for the return
of the balance of the retainer he had paid. When the client
initiated mandatory fee arbitration the firm commenced an action
against him seeking additional monies beyond what he had paid
them. The firm also sent a letter to the client's employer
disparaging him. In addition, two firm employees commenced a
defamation action against the client. After the client sent
a letter to the AGC complaining about this behavior, respondent,
in providing the firm's response to the AGC, expressly reserved
its rights to continue to proceed against the client in court.
The firm ultimately refused to participate in the fee
arbitration because it disagreed with the premise for it, and
then filed a defamation action against the client based on his
disciplinary complaint. In the context of that action
respondent mischaracterized the reason for why it did not appear
in the fee arbitration.
Charges 25-35: (alleging violation of rules 1.15(a), 1.15(b), former DR 9-102(e)(22 NYCRR 1200.46[e])/current rules 1.15(e), and 8.4(h)): These charges were based on actions by non attorney employees of the firms in connection with banks engaged by the firm, including employees' misrepresentation of their status with the firms; the withdrawal of funds from attorney escrow accounts for purposes not connected with the practice of law; chronic commingling of client settlement funds; and misappropriation of settlement funds.
Charges 36-39: (alleging violation of rules 1.15(a),
1.15(b), and 8.4(d)): These charges were leveled in connection
with the settlement by one of the firms on behalf of two
separate clients, in which the firm deposited the funds in
an operating account and misrepresented to the AGC the date the
client ultimately received the funds, and the amount of funds
paid to the client which had been commingled and misappropriated.
Charges 40-41: (alleging violation of rules 1.5(b) and
8.4(d)): These charges related to the use by the firms of
improper retainer agreements which barred clients from
discharging the firm (and imposed financial penalty for doing
so), and failed to advise as to their right to fee arbitration.
Charges 42-54: (alleging violation of rules 1.5(b) (failure to communicate to client scope of representation and fees and expenses for which client will be responsible), 1.5(d)(4) (prohibiting non refundable retainer fee), 1.5(f) (requiring participation in fee arbitration), 1.6(a) (knowingly reveal confidential information), 1.15(a), 1.15(b), 3.1(a) and (b), 8.4(d) and 8.4(h)). These charges relate to two of the firms' use of retainer agreements requiring a client to waive her right to fee arbitration and attempting to bar her from seeking a refund, and with respect to another client, failing to specify how fees and expenses were to be calculated and commingling and misappropriating that client's settlement funds; retaliatory and baseless litigation against two other clients and, with respect to one of those clients, disclosing client confidences and making unfounded representations to the AGC that the client intentionally deceived immigration authorities and that the firm had not sought additional legal fees from her.
Charges 55-61: (alleging violation of rules 3.1(a) and (b), 8.4(d) and 8.4(h)): These charges relate to inaccurate representations made by respondent to the AGC in his written submissions and deposition testimony; and, in a certain client matter, respondent's allowing non attorney employees to make false representations to the court and failing to produce requested documentation for the AGC.
As required, respondent conditionally admits the foregoing facts, and that those facts establish the various rules mentioned above. The parties stipulate to certain aggravating factors, to wit: that in 2012, respondent was issued an Admonition based on a 2006 conviction for criminal facilitation in the fourth degree (Penal Law § 115.00), a class A misdemeanor, which he failed to promptly report to the AGC, and that, while working as an accountant, respondent filed tax returns for a client who was operating an illegal prostitution business, that he characterized as an "employment agency" on the returns. The parties also stipulate to the following mitigating factors: that, since his admission in 1979, respondent has no prior disciplinary history other than his 2012 Admonition; his misconduct was not motivated by dishonesty or avarice "but instead represented faulty judgment and an inexcusable failure to safeguard his law license against misuse by others"; during the period at issue, respondent's judgment and mental focus were clouded by his over use of prescribed pain killers following back surgery; and he has expressed remorse for his misconduct.
Since liability has been established via respondent's conditional admissions, the only issue before this Court is the sanction to be imposed. The parties agree that "[t]he most serious charges against respondent involve his failure to supervise employees of his law firms who variously commingled and misappropriated client funds, and wrongfully retaliated against disciplinary complainants by filing frivolous lawsuits and betraying client confidences," and propose that a two-year suspension is the appropriate sanction. They further agree that while respondent's "recklessly untrue statements" to the Committee do not warrant disbarment, they "certainly merit a term of suspension." Indeed, the sanction proposed by the parties is supported by case law cited by the parties (see Matter of Zucker, 154 AD3d 29 [1st Dept 2017]; Matter of Maranga, 151 AD3d 31 [1st Dept 2017]; Matter of Galasso, 105 AD3d 103 [2d Dept 2013]).
In light of this precedent, we see no reason to disturb the two-year suspension to which sanction respondent, who is represented by competent counsel, has consented.
Accordingly, the parties' joint motion for discipline by consent should be granted, and respondent suspended from the practice of law in the State of New York for a period of two years and until further order of this Court.
All concur.
Order filed. [April 25, 2019].
The parties' joint motion for discipline by consent is granted, and respondent is suspended from the practice of law in the State of New York for a period of two years, effective May 28, 2019, and until further order of this Court.



Footnotes

Footnote 1:6As certain acts of misconduct occurred prior and subsequent to April 1, 2009, both the former Disciplinary Rules and the current Rules of Professional Conduct apply herein.