Matter of Lynch (2022 NY Slip Op 03477)





Matter of Lynch


2022 NY Slip Op 03477


Decided on May 31, 2022


Appellate Division, First Department


Per Curiam 



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 31, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith J. Gische,J.P.,
David Friedman
Peter H. Moulton
Saliann Scarpulla
Bahaati E. Pitt, JJ.


Motion No. 2022-00435 Case No. 2022-00416 

[*1]In the Matter of Luke D. Lynch, (Admitted as Luke Daniel Lynch Jr.), an Attorney and Counselor-at Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Luke D. Lynch (OCA Atty. Reg. No. 2250066), Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, as Luke Daniel Lynch, Jr., was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on June 19, 1970.




Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York
(Kelly A. Latham, Esq., of counsel), for petitioner.
Michael S. Ross, Esq., for respondent.



Per Curiam 


Respondent Luke D. Lynch was admitted to the practice of law in the State of New York by the Second Judicial Department on June 19, 1970, under the name Luke Daniel Lynch, Jr. At all times relevant to this proceeding, respondent maintained a registered business address within the First Judicial Department.
The Attorney Grievance Committee (AGC) seeks an order, pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9(a)(2) and (5), suspending respondent from the practice of law immediately and until further order of this Court, based on admissions made under oath and other uncontroverted evidence of professional misconduct that immediately threatens the public interest.
Respondent is the sole equity partner and principal of the law firm known as D'Amato & Lynch, LLP (D&L). Between 2016 and 2019, respondent dealt with health issues that prevented him from taking an active role in the management of his law firm and would only come into the office two to three days a week. During this period, respondent relied on an informal committee of three partners to manage the firm on a day-to-day basis. This arrangement continued until 2018, when the partners of the committee left the firm.
In October 2018, D&L requested that First Mercury Insurance Company (FMIC) issue a $1 million settlement check, payable to "D'Amato & Lynch LLP Trust Account," in connection with a matter entitled Colleen Cox v 118 E. 60th Owners, Inc., et al. FMIC issued the check as instructed. On October 17, 2018, the settlement check was deposited into D&L's operating account. The settlement funds were then depleted by a series of evidently improper transactions. D&L bank records show that on October 23, a $760,000 transfer was made from D&L's operating account to D&L's escrow account. Two days later, D&L issued a $753,000 escrow check signed by respondent and made payable to "Robinson & Cole as Trustee of Hartford Ins. Co. of the Midwest." The AGC contends that a majority of the FMIC settlement check funded the Robinson payment because the escrow account had insufficient funds to pay the $753,000 Robinson check before the October 23 $760,000 transfer to the escrow account. Additionally, while the check made payable to Robinson cleared on October 25, it was dated October 20. Thus, the AGC contends that "the check issued to Robinson predated the [October 23] $760,000 transfer to the escrow account, which was obviously a transfer in anticipation of payment to Robinson."
An audit of D&L bank accounts uncovered three other settlements that were comingled with firm funds. A $760,000 settlement check issued by FMIC, dated September 21, 2018, and made payable to D&L's escrow account, was deposited into D&L's operating account, and approximately $322,913 of those funds were disbursed. The AGC contends that none of the disbursements included payment in any amount to the rightful [*2]recipient; rather, the funds were used without permission or authority to pay unrelated D&L obligations.
On October 30, 2018, a $260,000 settlement check issued by FMIC, made payable to D&L's escrow account, was deposited into the firm's operating account, and immediate withdrawals were made against those funds. Respondent agreed that there was no indication that these funds were ever transferred to D&L's escrow account. A $260,000 check that appears to be the settlement payment for the FMIC $260,000 settlement check was drawn from the escrow account. The AGC contends that the fact that the funds were never transferred to the escrow account suggests that escrow account funds of other clients were misappropriated to pay the settlement.
On December 11, 2018, another settlement check issued by FMIC in the amount of $800,000 was again improperly deposited into the firm's operating account. Immediately prior to that deposit, the balance in the operating account had been $383,502.49. Withdrawals from the operating account between December 12 and 31, 2018 repeatedly caused the balance to fall below $800,000, and the AGC states that there is no indication that these withdrawals were for payment to the rightful recipient. Respondent agreed that the bank statement accurately reflected that these settlement funds were never transferred to the firm's escrow account.
Respondent, who was a signatory on the firm's accounts, stated that during the relevant time period, he relied entirely on an in-house comptroller and outside accountants who came in at least once a year to review all the firm's accounts. The firm's non-attorney comptroller, Michael Haig, handled all bookkeeping duties with respect to D&L's accounts through the use of cloud-based software. Respondent stated that Haig was responsible for depositing all checks received by the firm, as well as for disbursing funds owed to clients and third parties. Although respondent signed the escrow checks disbursing settlement funds, he averred that he did so only upon receiving written confirmation from the firm lawyer handling the matter of the fact of the settlement and of the amount held in the escrow account in connection with the matter.
Respondent testified that he never used the firm's cloud-based bookkeeping system and did not know whether anyone other than Haig had access to it. Moreover, during his tenure as the sole equity partner of D&L, respondent did not regularly review the firm's bookkeeping records, nor did he ever personally audit or reconcile the firm's accounts or request to see a ledger for them. Rather, he relied on monthly financial statements shown to him by Haig and outside accountants hired by the firm.
Respondent was vague when questioned by the AGC as to how Haig was supervised. Respondent testified that he "guess[ed] in a sense [Haig] would either report to [respondent] . . . and then there was a committee that started running the firm" and that he "guess[ed] [Haig] would have [*3]been reporting to them" but he "[did not] know how to answer that question really." Also, he could not say whether he made it clear to the partners whom he expected to run the daily operations of the firm that their responsibilities included supervising Haig. Although respondent admitted that he had suspicions about the propriety of Haig's conduct, he neither terminated Haig's employment nor reported him to law enforcement authorities. Although respondent claimed that, after the firm learned that the Cox settlement check had been wrongly deposited into its operating account, Haig's access to the firm's finances should have been cut off, respondent had no specific recollection of whether such a step had been taken.
According to the AGC, its efforts to fully reconstruct D&L's account ledgers were frustrated by Haig's lack of cooperation. Additionally, the vendor for the firm's cloud-based bookkeeping system would not grant respondent access to the records maintained therein because the vendor was owed over $100,000, which respondent claimed his firm could not pay.
We find that the circumstances presented here satisfy the requirements for imposition of an interim suspension under 22 NYCRR 1240.9(a), which provides that "[a] respondent may be suspended from practice on an interim basis . . . upon a finding by the Court that the respondent has engaged in conduct immediately threatening the public interest." It was the fiduciary duty of respondent, as D&L's sole equity partner, to protect client and third-party funds in D&L's possession, and respondent breached this duty. Respondent failed to properly monitor and oversee D&L's operating and escrow accounts, and to supervise the maintenance of those accounts, resulting in the commingling and misappropriation of settlement funds (see Matter of Newman, 35 AD3d 23 [1st Dept 2006]). In this regard, we note that this matter involves the misappropriation of approximately $1 million that, to date, has not been returned to the wronged parties and remains unaccounted for (cf. Matter of Zucker 154 AD3d 29, 35 [1st Dept 2017]). Respondent's apparent culpability is further aggravated by his lack of cooperation with the AGC due to his failure to secure access to the firm's cloud-based bookkeeping, thereby frustrating the AGC's efforts to reconstruct D&L's ledgers. (cf. Zucker, 154 AD3d at 34).
While respondent may have believed that the D&L partners of the management committee were properly supervising the firm's financial affairs, he does not definitively state that he directed any D&L attorneys to supervise Haig. Further, respondent's testimony that he signed the escrow checks only after receiving assurances that the funds were available, and his signature on improperly disbursed checks, belie his contention that he was not meaningfully involved in D&L's finances. Thus, even if respondent was personally unaware of any commingling or misappropriation of funds, he egregiously neglected his duty to supervise his subordinates[*4].
We find that respondent's continued practice of law during the pendency of this matter would pose an immediate threat to the public under 22 NYCRR 1240.9(a), even though the D&L firm is no longer operational and respondent no longer has control over escrow funds. Respondent continues to engage in the practice of law, albeit in a limited capacity, and he has not definitively expressed an intention to retire. Even in the absence of actual incidents of continuing misconduct, immediate harm threatening the public may be found based on the risk of potential harm when considered in light of the seriousness of the underlying offense (Matter of Giuliani, 197 AD3d 1, 22 [1st Dept 2021]). Respondent failed to supervise D&L's finances, which resulted in the commingling of approximately $2.8 million in third-party funds, $1 million of which has not been distributed to the rightful third-party plaintiff and remains unaccounted for.
Accordingly, the Committee's motion should be granted and respondent is suspended from the practice of law in the State of New York, effective immediately and until further order of this Court.
All concur.
IT IS ORDERED that the Attorney Grievance Committee's motion is granted and respondent, Luke D. Lynch, admitted as Luke Daniel Lynch Jr., is suspended from the practice of law in the State of New York, pursuant to 22 NYCRR § 1240.9(a)(2) and (5), effective immediately; until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court, and
IT IS FURTHER ORDERED that, pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, respondent Luke D. Lynch, admitted as Luke Daniel Lynch Jr., shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and,
IT IS FURTHER ORDERED that respondent Luke D. Lynch, admitted as Luke Daniel Lynch Jr., shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made a part hereof; and
IT IS FURTHER ORDERED that, within 20 days of the date of service of this decision, respondent Luke D. Lynch, admitted as Luke Daniel Lynch Jr., may submit a request, in writing, to this Court for a post-suspension hearing (see 22 NYCRR 1240.9 [c]), and
IT IS FURTHER ORDERED that if respondent Luke D. Lynch, admitted as Luke Daniel Lynch Jr., has been issued a secure pass by the Office of Court Administration, it shall be returned to the issuing agency.
Entered: May 31, 2022